The Supreme Court of the State of Colorado 
2 East 14th Avenue • Denver, Colorado 80203

2015 CO 65

Supreme Court Case No. 12SC820 
Certiorari to the Colorado Court of Appeals 
Court of Appeals Case No. 08CA2329

Petitioner: 
The People of the State of Colorado,
v.
Respondent: 
Kenneth Leon Childress.

Judgment Reversed 
en banc
November 23, 2015

Attorneys for Petitioner:
Cynthia H. Coffman, Attorney General
Majid Yazdi, Assistant Attorney General
Denver, Colorado
Attorneys for Respondent:
Douglas K. Wilson, Public Defender
Elizabeth Griffin, Deputy Public Defender
Denver, Colorado
JUSTICE COATS delivered the Opinion of the Court. CHIEF JUSTICE RICE concurs in the judgment.
 
¶1        The People petitioned for review of the court of appeals’ judgment vacating Childress’s conviction of vehicular assault while operating a motor vehicle under the influence of alcohol or drugs. Although it was undisputed that Childress was not driving the vehicle in question, the jury was instructed that he could be found guilty as a complicitor. The court of appeals concluded that because vehicular assault while under the influence is designated a strict liability offense, it requires no culpable mental state on the part of the driver, and it further found that this court had previously held complicitor liability inapplicable to crimes lacking a culpable mental state requirement.
¶2        As we clarify its reach and requirements today, complicitor liability in this jurisdiction is not limited to crimes defined as containing a culpable mental state. Because complicitor liability can extend to strict liability offenses, the judgment of the court of appeals vacating Childress’s conviction for vehicular assault is reversed. Whether the jury was adequately instructed concerning the requirements of complicitor liability, as now clarified by this court, and what effect any deficiency in that regard may have on the defendant’s conviction are not before this court. The matter is therefore remanded to the court of appeals with directions to address any other of the defendant’s assignments of error possibly impacting his conviction of vehicular assault.
I.
¶3        Kenneth Leon Childress was convicted by jury verdict of child abuse resulting in serious bodily injury, vehicular assault (driving under the influence), driving while impaired by alcohol, reckless endangerment, reckless driving, and two counts of contributing to the delinquency of a minor. He was sentenced to a term of 28 years in the custody of the Department of Corrections for child abuse, to be served concurrently with a 6-year sentence for vehicular assault (DUI), a 6-month jail sentence for driving while impaired, a 6-month sentence for reckless endangerment, and a 90-day sentence for reckless driving. He was also sentenced to two consecutive 4-year terms for contributing to the delinquency of a minor, to be served consecutively with his child abuse sentence.
¶4        The vehicular assault charge,[1] in particular, arose from a motor vehicle accident in which the defendant’s 17-year-old son was driving, while the defendant and his 3-year-old son were passengers. At trial, there was testimony from which the jury could find that upon learning someone produced a gun at a party from which the three had recently departed, the defendant and his older son decided to return, despite their both having been drinking heavily. It was undisputed that the older son drove, but testimony also indicated that the defendant urged him to speed and to disregard traffic signals, which he did, ultimately colliding with another vehicle and crashing into a building, severely injuring the younger son.
¶5        The jury was instructed that the defendant could be found guilty under a theory of complicity for a crime actually committed by another person, and it found him guilty of vehicular assault committed by causing serious bodily injury through the operation of a motor vehicle while under the influence of alcohol or drugs. On direct appeal, the court of appeals reversed a number of the defendant’s convictions and sentences for various unrelated errors, and it vacated the defendant’s conviction for vehicular assault, finding that complicitor liability in this jurisdiction does not extend to crimes lacking a culpable mental state requirement and that vehicular assault (driving under the influence), being statutorily designated a strict liability offense, does not include any culpable mental state requirement for conviction.
¶6        The People petitioned for a writ of certiorari.
II.
¶7        Article 1, Part 6 of the Colorado Criminal Code is designated “Parties to Offenses—Accountability” and specifies that a person is guilty of an offense if it is committed by the behavior of another person for which he is legally accountable according to the provisions of that Part. § 18-1-601, C.R.S. (2015). Part 6 then makes a person legally accountable for the behavior of an innocent person if he acts with the culpable mental state sufficient for the commission of an offense and causes that innocent person to engage in behavior sufficient for commission of the offense. § 18-1-602(1)(b), C.R.S. (2015). In addition to this so-called “innocent dupe” provision, however, section 602 also provides that a person will be legally accountable for the behavior of another whenever he is made accountable for the conduct of that person by either a statute defining a particular offense or by some specific provision of the Code. § 18-1-602(1)(a), C.R.S. (2015). Apart from those statutes defining particular offenses to which section 602 alludes, section 603, entitled “Complicity,” provides more generally that a person is also legally accountable as a principal for the behavior of another constituting a criminal offense if, “with the intent to promote or facilitate the commission of the offense, he or she aids, abets, advises, or encourages the other person in planning or committing the offense.” § 18-1-603, C.R.S. (2015).
¶8        Quite apart from those crimes actually defined in terms of acts that can by their very nature be physically performed through agents or instrumentalities rather than only by the defendant himself, cf. Vaughn v. Simpson, 135 P.3d 721, 723–24 (Colo. 2006) (construing words “[a]ny person who diverts” to include anyone whose well continues to be used with his authorization), Anglo-American law has long assigned some degree of criminal liability to accomplices, according to the various roles they performed in furtherance of a crime, see generally Wayne R. LaFave, Substantive Criminal Law § 13.1(a)–(c) (2d ed. 2003 & Supp. 2014) (discussing the common law treatment of what were formerly categorized as principals in the first and second degree and accessories before and after the fact). Well before statehood, this jurisdiction had altered, by statute, the common law categories of parties to a crime, providing instead that accessories, as broadly defined by the statute to include both principals in the second degree and accessories before the fact, be deemed and considered as principals and punished accordingly. See Act Concerning Criminal Jurisprudence, sec. 13, 1861 Colo. Terr. Sess. Laws 290, 292; see also § 40-1-12, C.R.S. (1963) (derived from the 1861 act, concerning liability for accessories before the fact). Prior to enactment of the Colorado Criminal Code, however, the criminal statutes of the jurisdiction made no attempt to comprehensively provide for the legal accountability of one person for the behavior of another.
¶9        While perhaps not a radical departure from this statutory treatment of accessories, the current statutory treatment of accomplice liability in terms of “complicity,” including its express requirement of “intent to promote or facilitate the commission of the offense,” first appeared in the legislation of the jurisdiction with the adoption of the Colorado Criminal Code, effective July 1972, see ch. 121, sec. 1, § 40-1-703, 1971 Colo. Sess. Laws 388, 406; and apart from conversion to gender neutral language and the addition of the word “encourages” to the list of qualifying acts in furtherance of planning or committing the crime, the complicity statute in this jurisdiction has remained unchanged, compare § 40-1-703, C.R.S. (Supp. 1971), with § 18-1-603, C.R.S. (2015). As the result, however, of subsequent changes in pattern jury instructions, statutes defining culpable mental states, and case law both construing and applying the statute, the landscape of accomplice, or complicitor, liability in this jurisdiction has undergone several pronounced stages of development, leading to and framing the court of appeals’ analysis at issue today.
¶10        Any meaningful answer to the question whether complicitor liability can extend to crimes containing no culpable mental state of their own is now necessarily dependent upon the precise meaning of the statutory phrase “with the intent to promote or facilitate the commission of the offense.” There can be little question that our prior pronouncements concerning the implications of that phrase, made (as they have been) in the context of crimes with differing culpable mental states and involving (as they have) different acts in furtherance, are at various points in the analysis difficult to reconcile. We therefore take this opportunity to clarify and, to the extent necessary, reconsider the historical, theoretical, and statutory underpinnings of complicitor liability in this jurisdiction.
A.
¶11        In the period immediately following the enactment of the Criminal Code, the pattern criminal jury instructions merely provided an informational instruction quoting the statutory language, see COLJI-Crim. 6:5 (1972 & rev. ed. 1974) (on file with the Colorado Supreme Court Library), and this court continued to apply the case law predating the enactment of the Criminal Code, largely without reference to the new statutory language. In 1974, with regard to a crime committed after the enactment of the Criminal Code but before its effective date, this court summarized a half-century of court-made law to conclude that liability as an “accessory” required findings that (1) the principal committed the crime, (2) the accessories had knowledge that the principal intended to commit the crime, and (3) having this knowledge, the accessories did in fact aid or encourage, with the specific intent to so aid or encourage, the principal in the commission of the crime. People v. Marques, 520 P.2d 113, 118 (Colo. 1974). As late as 1982, we continued to require these same three findings, largely unaltered, for liability as a complicitor under section 18-1-603. See People v. Thompson, 655 P.2d 416, 418 (Colo. 1982); see also People v. Larson, 572 P.2d 815, 817 (Colo. 1977); People v. Martin, 561 P.2d 776, 777 (Colo. 1977).
¶12        In 1983, however, with the publication of the Colorado Jury Instructions (Criminal), the uniform or pattern complicity instruction changed radically. In an apparent attempt to account for prior case law approving accessory instructions in prosecutions for aggravated robbery involving evidence sufficient to find that one person held the victim at bay while another actually took the thing of value, see, e.g., Reed v. People, 467 P.2d 809, 811–13 (Colo. 1970), the pattern instruction altered these requirements in several significant ways. First, it converted the widely-accepted requirement that another person must have committed the crime in question, see generally LaFave, supra, § 13.3(c) (titled, “The Limits of Accomplice Liability—Crime by the Principal”), into a requirement merely that “[a] crime must have been committed” and that “[a]nother person must have committed all or part of the crime.” See COLJI-Crim. 6:04 (1983) (emphasis added).[2] Second, although the 1983 instruction carried forward the requirement from prior case law that the defendant must have had “knowledge” that the other person intended to commit the crime, it nevertheless modified that requirement with the addition, once more, of the words “all or part of.” Id. Finally, rather than requiring that “having the requisite knowledge,” the defendant “did aid, abet or encourage the principal in the commission of the crime,” as had been required by prior case law, see Thompson, 655 P.2d at 418, the new pattern instruction substituted instead the condition that the “defendant did intentionally aid, abet, advise, or encourage the other person in the commission or planning of the crime,” COLJI-Crim. 6:04 (1983) (emphasis added).[3]
¶13        Although the jury instructions committee entirely omitted the key statutory phrase “with the intent to promote or facilitate the commission of the offense,” apparently treating it instead as a requirement that the defendant intentionally perform an act in furtherance of the commission or planning of the crime, the meaning of “intent to promote or facilitate” had already become a matter of controversy in the case law of the jurisdiction and would soon become central to the scope of complicitor liability altogether. More than a year before completion of the 1983 jury instructions project, this court concluded in People v. R.V., 635 P.2d 892, 894 (Colo. 1981), that because complicity is not itself a separate crime, the word “intent” appearing in the statutory phrase “with intent to promote or facilitate” could not refer to the culpable mental state of “‘[i]ntentionally’ or ‘with intent’” defined at section 18-1-501(5), C.R.S. (2015). Rather we characterized it as “descriptive language,” not requiring separate definition for the jury. R.V., 635 P.2d at 894. Eight years later, in People v. Wheeler, 772 P.2d 101, 103–04 (Colo. 1989), this court extended R.V. to find not only that the statutory phrase “with intent to facilitate or promote the commission of the offense” does not implicate the statutory culpable mental state of “intentionally,” but also, analogizing to a line of reasoning developed with regard to our “attempt” statute, see People v. Thomas, 729 P.2d 972, 974–77 (Colo. 1986) (reconciling and extending the reasoning of People v.  Frysig, 628 P.2d 1004 (Colo. 1981), People v. Castro, 657 P.2d 932 (Colo. 1983), and People v. Krovarz, 697 P.2d 378 (Colo. 1985)), that the intent of which the phrase speaks is the intent to aid the principal in his “criminal act or conduct,” as distinguished from the intent that he cause a particular result, even where causing such a result would be an element of the offense.
¶14        The question before us in Wheeler, a statutorily permitted appeal of a question of law by the People, was whether the requirement of knowledge by the complicitor that the principal intended to commit the crime, announced in Marques and carried forward in Thompson, effectively precluded complicitor liability for an unintentional killing, more particularly in Wheeler, for criminally negligent homicide. In concluding that complicitor liability in this jurisdiction can extend to criminally negligent homicide, we addressed the “intent to promote or facilitate” language of the statute for the first time, specifically relating it to the “knowledge” requirement of pre-Criminal Code case law. Wheeler, 772 P.2d at 103–04. We reasoned that this statutory language does not require that the complicitor intend for the principal to cause death, or even intend for him to act in a criminally negligent manner, but instead that the complicitor must intend to aid the principal in his criminal act or conduct, with knowledge that the principal is engaging in, or is about to engage in, conduct constituting the commission of the crime. Id. As we expressed this concept later in the opinion, with regard to the crime of criminally negligent homicide in particular, the complicitor must be aware that the principal is engaging in conduct constituting criminal negligence. Id. at 105.
¶15        After the passage of another eight years, however, in rejecting a challenge to the pattern jury instruction for injecting structural error into a conviction for complicity in the crime of robbery by omitting the complicity statute’s intent requirement and permitting conviction upon a jury finding that another person committed no more than “part” of the crime in question, we did two things that were arguably at odds with our reasoning in Wheeler. See Bogdanov v. People, 941 P.2d 247, 250–52 (Colo. 1997). Notwithstanding Wheeler’s construction of the statutory phrase “with the intent to promote or facilitate the commission of the crime,” we limited the so-called “rule of Wheeler” to crimes of either recklessness or negligence. Id. at 251. In addition, we held for the first time in this jurisdiction that “complicity liability” can exist only if “the complicitor has the culpable mental state required for the underlying crime committed by the principal.” Id. at 250. We concluded that Wheeler in no way dispensed with that requirement for crimes in which the elements included a mental state of intentionally, with intent, knowingly, or willfully. Id. at 251 & n.9.
¶16        Although we characterized complicitor liability as effectively entailing a dual mental state, much as we had done in Wheeler, we articulated the elements of that mental state differently. Id. at 252. With regard to “the intent to promote or facilitate commission of the offense,” rather than explaining that this language of the statute refers merely to an “intent to aid the principal in the criminal act or conduct,” as we had done in Wheeler, we simply repeated the statutory language itself. Id. And for the knowledge or awareness requirement we identified in Wheeler, we substituted a requirement that the complicitor have the culpable mental state required for the underlying crime committed by the principal. Id. at 250.
¶17        The intermediate appellate court has since been forced to wrestle with our complicity jurisprudence on a number of occasions, but until today we have addressed the relationship between Wheeler and Bogdanov only once. In Grissom v. People, 115 P.3d 1280 (Colo. 2005), faced with the unusual situation in which a criminal defendant himself assigned error to a ruling denying his requested complicity instruction as to the crime of reckless manslaughter, a lesser included offense of the one the trial court found the principal to have committed, we agreed, explaining that there was evidence from which the jury could conclude that Grissom and the principal were engaged in a common enterprise to at least assault the victim in the course of collecting a debt, thereby exposing Grissom to liability for reckless manslaughter upon the victim’s death. Id. at 1286–87. In Grissom we purported to reaffirm both Wheeler and Bogdanov, without identifying any tension between the two, holding that in this jurisdiction “accomplice liability tracks that degree of knowledge which the complicitor’s actions of aiding and abetting evince.” Id. at 1286. Accepting, without discussion, Bogdanov’s characterization of Wheeler as applying only to crimes of either recklessness or negligence and as requiring no more than knowledge that the principal is engaging in, or is about to engage in, criminal conduct, however, we felt a need to tighten the connection between principal and complicitor by further limiting the holding of Wheeler to common enterprise cases.[4]Id.
¶18        Compelled as we now are to address a class of cases never at issue in either Wheeler or Bogdanov but requiring an extension of our reasoning from both, the tension between our rationales in those cases becomes increasingly apparent. We have previously acknowledged, as the direct result of subsequent Supreme Court jurisprudence, that the understanding we formerly held of the scope and consequences of structural error—the understanding that drove our discussion of mental state requirements in Bogdanov—turned out to be in error. See Griego v. People, 19 P.3d 1, 7–8 (Colo. 2001) (discussing Neder v. United States, 527 U.S. 1 (1999), and identifying Bogdanov as one of the examples of our pre-Neder misconception of the scope of structural error). For the reasons we discuss more fully below, we now retreat from Bogdanov’slimitation of the Wheeler rationale to crimes of recklessness and crimes of negligence, and offer a more complete explanation of, and textual justification for, the statutory requirements of complicitor liability in this jurisdiction.
B.
¶19        In Wheeler, we first attempted to explain the long-standing requirement of “knowledge by the complicitor that the principal intended to commit the crime,” 772 P.2d at 103 (emphasis added), in terms of the statutory requirement that the complicitor aid, abet, or advise “with the intent to promote or facilitate the commission of the offense.” Id. (emphasis added). Differences between the mental states of “intent” and “knowledge” are subtle at best, and this is especially true in the context of accomplice liability. Compare Rosemond v. United States, 134 S. Ct. 1240, 1248–49 (2014) (finding the requirement of intent to facilitate an offense’s commission to be satisfied when a person actively participates in a criminal venture with full knowledge of the circumstances constituting the charged offense), with id. at 1253 (Alito, J., concurring in part and dissenting in part) (criticizing the majority’s use of “intent” and “knowledge” interchangeably as perpetuating the tension already existing in Supreme Court accomplice jurisprudence, but adding, “[B]ecause the difference between acting purposefully (when that concept is properly understood) and acting knowingly is slight, this is not a matter of great concern.”). Due in part to the subtlety of their differences, in part to certain actual policy differences concerning the desirable scope of accomplice liability, but in large part to what appears to be simply a lack of care or precision in expression, variation in the language expressing this requirement, found in both case law and legislation throughout the country, is well-documented. See generally LaFave, supra, § 13.2(b) (titled, “Accomplice Liability—Acts and Mental States—Mental State Generally”) (“This uncertainty is reflected in the considerable variation in the language used by courts and legislatures on this point. Some cases speak in terms of the accomplice’s knowledge or reason to know of the principal’s mental state, some as to the accomplice’s sharing the criminal intent of the actor, and some about the accomplice’s intent to aid or encourage.” (Footnotes omitted)).
¶20        The question whether accomplice liability should attach based solely on some degree of knowledge, or awareness, that some act or conduct may, or is even likely to, further the commission of a particular crime by someone else or, instead, whether an actual purpose or design to promote or facilitate the offense should be required, was a matter heavily debated by the drafters of the Model Penal Code. See Model Penal Code and Commentaries § 2.06 cmt. 6(c) (Am. Law Inst., Official Draft & Rev. Comments 1985) (summarizing the debate by discussing and contrasting the positions of Judge Hand of the Second Circuit, see, e.g., United States v. Peoni, 100 F.2d 401, 402 (2d Cir. 1938), and Judge Parker of the Fourth Circuit, see, e.g., Backun v. United States, 112 F.2d 635, 637 (4th Cir. 1940)). While the Model Penal Code (with the Institute itself rejecting the recommendation of the Chief Reporter) ultimately settled on the latter approach, see id. § 2.06(3)(a), it nevertheless ensured that accomplice liability for crimes defined in terms of a prohibited result would not be limited to specific intent crimes, much less to specific intent crimes in which the complicitor shared with the principal the requisite specific intent that the prohibited result occur. It did this largely by including two provisions that find no parallel in the Colorado Criminal Code, either today or as it existed by the time of Wheeler.
¶21        First, the Model Penal Code defined the highest, or most culpable, mental state giving rise to criminal liability (which it rendered “purposely” rather than “intentionally” or “with intent”) not only in terms of a conscious objective to cause a result, as currently does the Colorado Criminal Code, see § 18-1-501(5), C.R.S. (2015), but also in terms of a conscious objective to engage in conduct of a particular nature, with an awareness of any required attendant circumstances. Model Penal Code and Commentaries § 2.02(2)(a). Second, it included a separate provision specifically addressing crimes defined in terms of causing a particular result, delineating the requisites of accomplice liability relative solely to crimes of that nature. See id. § 2.06(4). For accomplice liability to arise in the commission of crimes containing the occurrence of a prohibited result as one of their elements, no more would be required than acting as an accomplice in the “conduct causing the result, with the kind of culpability, if any, with respect to that result that is sufficient for the commission of the offense.” Id.  (emphasis added).
¶22        The Colorado Criminal Code, like a number of relatively contemporaneous proposals for criminal code revisions in other states, was substantially influenced by the Model Penal Code and, with regard to the provisions governing liability for the conduct of another in particular, by a proposed Michigan code, itself acknowledging its indebtedness to the Model Penal Code. See § 40-1-703 cmt., C.R.S. (Supp. 1971). Significantly, however, with regard to the scope of accomplice liability, the proposed Michigan code made a different choice from that of the Model Penal Code. Instead, it substantially followed the Model Penal Code’s original draft by allowing complicitor liability to attach not only where the complicitor aids the principal “with the intent to promote or facilitate the commission of the offense,” but also where the complicitor provides means or opportunity for the commission of the offense “with knowledge that such other person was committing or had the purpose of committing the offense.” Mich. Rev. Crim. Code § 415 (Final Draft Sept. 1967) (on file with the Colorado Supreme Court Library); see also Model Penal Code and Commentaries § 2.06 cmt. 6(c), at 314–15 & n.47. Whether, by extending complicitor liability beyond crimes which the accomplice intended to promote or facilitate, the drafters of the proposed Michigan code saw no need for a separate provision corresponding to that of the Model Penal Code for crimes defined in terms of causing a particular result, or for some other reason altogether, no such provision was included.
¶23        Although both text and comment clearly demonstrate that the Colorado General Assembly borrowed heavily from the Michigan proposal with regard to the statutory scheme concerning liability for the behavior of another in general, and the definition of “complicity” in particular, it is also apparent, from both text and comment, that the Colorado Criminal Code entirely, and deliberately, omits the second Michigan alternative, suggesting that the committee considered it, as did the American Law Institute, to extend complicitor liability too far. See § 40-1-703 & cmt., C.R.S. (Supp. 1971). One perhaps unnoticed effect of partially tracking the Michigan proposal, rather than directly following the Model Penal Code approach, however, was that the Colorado Criminal Code ultimately included neither the knowledge prong of the Michigan proposal nor the separate provision for prohibited-result-crimes of the Model Penal Code. With regard to the first prong of the Michigan proposal, concerning “the intent to promote or facilitate” (which this jurisdiction did adopt), the comment makes clear that the recommending legislative committee simply considered this provision to be largely a restatement of existing Colorado law relating to the treatment of accessories before the fact as principals. See id.
¶24        One final development is essential for a full understanding of the issue with which we were confronted in Wheeler. At the time the complicity statute was enacted, the general assembly also enacted specific definitions for the culpable mental states that would govern Colorado criminal law. See ch. 121, sec. 1, § 40-1-601, 1971 Colo. Sess. Laws 388, 403–04. The highest, or most culpable, of these mental states was designated “intentionally,” again following the proposed Michigan code rather than Model Penal Code terminology, and was defined broadly as having a conscious objective to either cause a particular result or engage in conduct required for the offense in question. § 40-1-601(6), C.R.S. (Supp. 1971). In addition, in this jurisdiction the culpable mental state “intentionally” expressly included an arguably objective alternative, encompassing even actions that merely gave rise to a substantial certainty that any prohibited result would be produced. Id. Following the identification by this court of equal protection concerns inherent in the failure of a number of the new culpable mental state definitions to distinguish themselves from each other, see Calvaresi v.  People, 534 P.2d 316, 318–19 (Colo. 1975), the objective knowledge alternative of “intentionally” was completely eliminated. Ch. 167, sec. 1, § 18-1-501(5), 1975 Colo. Sess. Laws 616, 616. Two years later, as part of an Act clarifying the limits of the defense of voluntary intoxication, the highest culpable mental state was again redefined, this time rendered as “‘[i]ntentionally’ or ‘with intent.’” Ch. 224, sec. 1, § 18-1-501(5), 1977 Colo. Sess. Laws 959, 959; see Frysig, 628 P.2d at 1009–10 (discussing legislative intent of 1977 amendments to limit scope of voluntary intoxication defense by changing certain crimes from specific to general intent crimes); see also People v. Cornelison, 559 P.2d 1102, 1105 (Colo. 1977) (finding, just prior to the 1977 amendment, crimes defined by “intentionally,” like second degree murder, to be specific intent crimes, subject to the defense of voluntary intoxication). In addition to declaring all crimes with such a mental state to be “specific intent offenses,” the 1977 amendment eliminated all reference to engaging in conduct, limiting “intentionally” to a culpable mental state defined exclusively in terms of having a conscious objective to cause a particular result. Ch. 224, sec. 1, § 18-1-501(5), 1977 Colo. Sess. Laws 959, 959.
¶25        Given the statutory requirement that in order to qualify as a complicitor one must aid, abet, or advise “with the intent to promote or facilitate the commission of the offense,” and given the amended statutory definition of the term “with intent,” ostensibly limiting the applicability of that culpable mental state to crimes with elements of causing particular results, this court was directly faced in Wheeler with the question whether the legislature had effectively abandoned accomplice liability for all crimes except those in which the complicitor shared with the principal a conscious objective, or specific intent, to cause a particular result; or instead, whether the complicity statute was susceptible of an alternate construction, consistent with a legislative intent to preserve broader accomplice liability based on some degree of knowledge or intent other than a conscious objective to cause a particular result. See Wheeler, 772 P.2d at 103. While we were concerned in Wheeler with the specific question whether complicitor liability could extend to a crime of criminal negligence and, after reasoning that it could, we set out the specific findings necessary for complicity in criminally negligent homicide, our rationale can only be understood as an answer to the broader question concerning the meaning of the statutory language—not an answer limited to crimes of negligence, or even crimes of negligence and crimes of recklessness, as we subsequently suggested in Bogdanov.
¶26        While in Wheeler we may not have fully explained (or perhaps even fully appreciated) the implications of our rationale for crimes of specific intent or awareness, we clearly interpreted the phrase “with the intent to promote or facilitate the commission of the offense,” which defines complicitor liability generally. See id. We concluded that the intent of which the statute speaks is the intent to aid the principal in his criminal act or conduct, as distinguished from an intent to aid him in causing a particular result. Id. In reconciling what we referred to as the “common meaning” of the word “intent,” with the long-standing requirement in this jurisdiction of “knowledge” that the principal intended to commit the crime, we further concluded that the “intent to promote or facilitate the commission of the offense,” as now expressly required by statute, necessarily implies a degree of awareness on the part of the complicitor concerning the broader nature of the behavior in question, including the mental state of the actor. Id. at 104. By construing the statute to require that a complicitor aid, abet, or advise another with the required awareness, as well as an actual intent to aid the other person in his criminal act or conduct, Wheeler avoided a construction limiting accomplice liability to specific intent crimes in which the accomplice shares the principal’s specific intent to cause a particular result. Cf. Model Penal Code § 2.06 cmt. 7 n.71 (noting the dilemma faced by those jurisdictions, including Colorado, that failed to enact a separate provision for crimes defined in terms of causing a particular result).
¶27        In Bogdanov, in responding to an assertion that the pattern complicity instruction violated due process of law by failing to instruct on a complicitor’s required mental state, and thereby amounted to structural error, we were at pains to demonstrate the contrary and therefore too hastily distinguished Wheeler by imputing a new culpable mental state requirement for complicitor liability. In retrospect, it seems clear that this requirement, which we assumed from the common law and jurisdictions retaining similar requirements, lacks support in our own statutes, case law, or applicable constitutional limitations. See Bogdanov, 941 P.2d at 250–51 (relying exclusively on a treatise concerning substantive criminal law). Even if fundamental principles of due process could in some way limit the imposition of accomplice liability on a strict liability basis, the requirements of knowledge and intent for complicity liability in this jurisdiction, as clarified today, clearly satisfy any conceivable due process requirement.
¶28        In the absence of some more specific statutory authorization, like that of our own attempt statute, § 18-2-101, C.R.S. (2015) (“A person commits criminal attempt if, acting with the kind of culpability otherwise required for commission of an offense . . .” (emphasis added)), or our so-called “innocent dupe” provision, § 18-1-602(1)(b) (“He acts with the culpable mental state sufficient for the commission of the offense in question and he causes an innocent person to engage in such behavior.” (Emphasis added)), or even other accomplice liability schemes making special provision for crimes of a certain type, see, e.g., Model Penal Code § 2.06(4) (“When causing a particular result is an element of an offense, an accomplice in the conduct causing such result is an accomplice in the commission of that offense if he acts with the kind of culpability, if any, with respect to that result that is sufficient for the commission of the offense.” (Emphasis added)), the gloss of Bogdanov, that a complicitor must have the culpable mental state required for commission of the crime itself, was precisely the kind of mental state requirement for which we were unable to find any support in Wheeler. Instead, in Wheeler we construed the language actually found in our statute to provide an alternate basis, in terms of the complicitor’s awareness of the principal’s culpable mental state, for extending the reach of complicitor liability beyond crimes defined by a specific intent to cause a particular result. Wheeler, 772 P.2d at 103–04.
¶29        Compelled, as we now are by a situation beyond any we have yet considered, to refine our complicity jurisprudence and reconcile the rationales of Wheeler and Bogdanov, we conclude that the “dual mental state requirement” of complicitor liability in this jurisdiction is more properly characterized as a requirement that the complicitor have: (1) the intent, in the commonly understood sense of desiring or having a purpose or design, to aid, abet, advise, or encourage the principal in his criminal act or conduct, and (2) an awareness of those circumstances attending the act or conduct he seeks to further that are necessary for commission of the offense in question. By “circumstances attending the act or conduct,” we intend those elements of the offense describing the prohibited act itself and the circumstances surrounding its commission, including a required mental state, if any; as distinguished from any element requiring that such act have a particular effect, or cause a particular result. With regard to causing a particular result that is an element of the offense in question, rather than mandating that a complicitor himself act with the kind of culpability otherwise required for commission of the offense, complicitor liability as defined by statute in this jurisdiction mandates that the complicitor act with an awareness the principal is or would be acting with that required mental state.
¶30        Although we now acknowledge that the text of the Colorado Criminal Code provides no basis for requiring that complicitor liability be contingent upon a complicitor’s acting with the culpable mental state required for commission of the crime in question, our construction of the intent requirement of the statute imposes a comparable, if not more onerous, standard for establishing complicitor liability, in virtually every possible scenario. Complicitor liability for crimes of negligence, for example, cannot arise in this jurisdiction as the result of merely acting negligently in aiding, abetting, advising, or encouraging another in the commission of a crime. Under our construction, complicitor liability for such a crime requires that the complicitor himself be aware of the substantial and unjustifiable risk the principal fails to perceive and, in addition, both that he be cognizant of the principal’s failure to perceive that risk through a gross deviation from the standard of care that a reasonable person would exercise and that he intend for the principal to proceed with his criminally negligent conduct anyway.
¶31        With regard to crimes including a mental culpability requirement expressed as either “recklessly” or “knowingly,” the two culpable mental states actually defined in terms of awareness of a circumstance or a likelihood that a prohibited result will be caused, there is even less difference between the mental states required of a principal and a complicitor. As to crimes of recklessness, a complicitor cannot, as a practical matter, be aware that the principal is consciously disregarding a substantial and unjustifiable risk, see § 18-1-501(8), C.R.S. (2015), without being aware of that risk himself. As to crimes that must be committed knowingly, being aware, or knowing, that the principal is himself aware his conduct is of a certain nature or that a specified circumstance exists, see § 18-1-501(6), C.R.S. (2015), necessarily entails the complicitor’s own awareness of the nature of the principal’s conduct or the existence of that circumstance. By the same token, knowing that the principal is himself aware his conduct is practically certain to cause a prohibited result is little, if at all, different from being aware that the principal’s conduct is practically certain to cause that result.
¶32        Only with regard to crimes of specific intent do the mental state requirements of complicity, following the rationale of Wheeler, arguably require a less culpable state of mind on the part of the complicitor than of the principal; and as a practical matter, any difference between having both the knowledge that the principal is acting with a conscious objective to cause a prohibited result and the design or desire to promote or facilitate that act, on the one hand, and actually having the conscious objective that the prohibited result occur, on the other, is largely academic. In any event, it could hardly be said that a complicitor’s act of aiding, abetting, advising, or encouraging another person with both an awareness that the other person is engaging in behavior, the conscious objective of which is to cause a prohibited result, and a design that he do so, is any less culpable than having that conscious objective himself.
¶33        In Grissom, concerned that our rationale in Wheeler, as explained and modified in Bogdanov, had veered too far in some cases from mandating a sufficient connection between the conduct of the principal and complicitor, we emphasized the importance of that connection in terms of a common enterprise. See Grissom, 115 P.3d at 1286. More appropriately understood as mandating an intent or design by the complicitor to aid, abet, advise, or encourage the principal in his criminal act or conduct, Wheeler admits of no such lack of connection. As we now clarify it, although the intent requirement of the complicity statute does not extend to prohibited results, it nevertheless requires an intent to aid or encourage the criminal act, combined with an awareness of sufficient attendant circumstances. An additional requirement of engagement in a common enterprise is therefore wholly unnecessary, except perhaps in the limited situation for which it was actually announced—a request by the defendant that the jury be permitted to find him complicit in an offense less serious than the one actually committed by the principal.
¶34        Properly construed, section 18-1-603 therefore dictates that a person is legally accountable as a principal for the behavior of another constituting a criminal offense if he aids, abets, advises, or encourages the other person in planning or committing that offense, and he does so with: (1) the intent to aid, abet, advise, or encourage the other person in his criminal act or conduct, and (2) an awareness of circumstances attending the act or conduct he seeks to further, including a required mental state, if any, that are necessary for commission of the offense in question.
III.
¶35        While the distinction between having, or sharing, a culpable mental state required for commission of the crime, on the one hand, and knowing that the person being aided is acting with such a required mental state, on the other, may at times seem without practical significance, it is particularly meaningful with regard to the applicability of complicitor liability to crimes lacking any culpable mental state at all. Despite the fact that the question of strict liability was never before us in Bogdanov, and that we gave no indication we intended to address it, the language of our opinion limiting the so-called “rule of Wheeler” to crimes of recklessness or negligence, in conjunction with our reference to a dual mental state requirement, half of which being that the complicitor have the culpable mental state required for the underlying crime, provided the court of appeals with more than ample reason to infer that we had rejected the possibility of complicitor liability for crimes lacking any culpable mental state at all. Phrased more precisely as a requirement that the complicitor be aware of required attendant circumstances, including any mental state that may be included as an element, the justification for this inference entirely disappears.
¶36        Complicitor liability for a strict liability offense, however, is clearly not itself a matter of strict liability. As complicity is defined in this jurisdiction, liability as a complicitor for aiding, abetting, advising or encouraging a strict liability offense nevertheless requires both an awareness and intent regarding the principal’s criminal conduct. Rather than posing any conceptual difficulty, complicitor liability for strict liability offenses, as with other unintentional offenses, follows inexorably from the statutory language defining complicitor liability, as we construed that language in Wheeler. To the extent our characterization of Wheeler, in Bogdanov or subsequent cases, suggests otherwise, we disavow any such suggestion.[5]
¶37        Because complicitor liability can extend to strict liability crimes in this urisdiction, the court of appeals erred in vacating the defendant’s conviction for vehicular assault while operating a motor vehicle under the influence of alcohol or drugs, as defined at section 18-3-205(1)(b)(I). Instead, as our clarification today indicates, the defendant could be found liable as a complicitor if someone else committed the crime and the defendant aided, abetted, advised, or encouraged him in his criminal act or conduct, with both an awareness of the required circumstances and an intent that he proceed with that conduct anyway.
¶38        Although the crime of vehicular assault while under the influence contains no statutorily-designated culpable mental state, it nevertheless requires the performance of a voluntary act, see People v. Rostad, 669 P.2d 126, 129–30 (Colo. 1983), under particular circumstances—the operation of a motor vehicle while under the influence of alcohol or drugs. Despite the fact that the elements of the offense do not require that the principal know he is under the influence at the time, or even that he act recklessly or negligently with regard to that circumstance,[6] in order to be accountable as a complicitor in this jurisdiction, the defendant must not only be aware of that circumstance but in fact intend that the principal operate a motor vehicle in any event. Given the evidence in this case, in order for the defendant to have been found complicit in the crime of vehicular assault while under the influence, the trier of fact must have concluded that he encouraged his son to drive, both knowing that by doing so the son would be driving while under the influence of alcohol and intending that he do so anyway.
IV.
¶39        Because complicitor liability in this jurisdiction can extend to strict liability offenses, the judgment of the court of appeals vacating Childress’s conviction for vehicular assault is reversed. Whether the jury was adequately instructed concerning the requirements of complicitor liability, as now clarified by this court, and what effect any deficiency in that regard may have on the defendant’s conviction are not before this court. The matter is therefore remanded to the court of appeals with directions to address any other of the defendant’s assignments of error possibly impacting his conviction of vehicular assault.
 

[1] § 18-3-205(1)(b)(I), C.R.S. (2015).
[2] In its entirety, the 1983 instruction reads as follows:
A person is guilty of an offense committed by another person if he is a complicitor. To be guilty as a complicitor, the following must be established beyond a reasonable doubt:
1. A crime must have been committed
2. Another person must have committed all or part of the crime
3. The defendant must have had knowledge that the other person intended to commit (all or part of) the crime
4. The defendant did intentionally aid, abet, advise, or encourage the other person in the commission or planning of the crime.
COLJI-Crim. 6:04 (1983).
[3] Although not of particular consequence for the question before us today, despite the fact that the word “encourages” was deliberately omitted from the complicity statute, as adopted in 1971, compare Colo. Crim. Code § 40-1-703 (First Draft & Legis. Draft Jan. 1, 1971) (on file with the Colorado Supreme Court Library), with ch. 121, sec. 1, § 40-1-703, 1971 Colo. Sess. Laws 388, 406; see also List of Policy Questions Resulting from Sessions with Public Defenders and District Attorneys at 5 in Colo. Crim. Code: As Introduced and Comments (Draft Feb. 1971) (on file with the Colorado Supreme Court Library) (noting recommendation from public defender that “encouraging” be eliminated from the language of the complicity statute), and was reintroduced into the statutory language only in 1997, ch. 264, sec. 3, § 18-1-603, 1997 Colo. Sess. Laws 1539, 1540, it always remained an element of the litany of qualifying acts in furtherance of the commission or planning of the crime in question in both the case law of the jurisdiction and the pattern jury instructions.
[4] Of the six members of the court participating in Grissom, two justices, including the authoring justice of Bogdanov, would have simply overruled our precedent and retreated to a position of no complicitor liability for anything but the intentional acts of the principal. See id. at 1288 (Bender, J., joined by Kourlis, J., dissenting).
[5] In Wheeler we expressly declined to comment on the adequacy of the pattern complicity instruction, as not being before us in that case. 772 P.2d at 102. In People v.  Rodriguez, 914 P.2d 230, 276 (Colo. 1996), we actually found giving the pattern instruction to have been error, although harmless in that case. By contrast, in Bogdanov, by modifying the pattern instruction to avoid mis-instructing where it was undisputed that a single person performed all the acts required for commission of the crime, we backhandedly appeared to approve, if not actually require, our modified pattern instruction for complicity prosecutions generally. See 941 P.2d at 253–54 & n.10. Because we consider it misleading, especially in light of our fuller discussion of complicitor liability today, to leave in place any suggestion that the 1983 pattern instruction, even as modified in Bogdanov, adequately instructs concerning a theory of guilt by complicity, we also expressly disavow any suggestion to that effect in Bogdanov.
[6] By referring to the elements of the offense, we intend no comment on the defense of intoxication that is not self-induced. See § 18-1-804(3), (5), C.R.S. (2015).
 
 
CHIEF JUSTICE RICE concurs in the judgment.
CHIEF JUSTICE RICE, concurring in the judgment.
¶40        I agree with the majority that a defendant may be held accountable as a complicitor when the underlying criminal offense is one of strict liability. However, unlike the majority, I would simply hold that People v. Wheeler, 772 P.2d 101 (Colo. 1989), resolves the question we are faced with today. I am concerned by the majority’s purported abrogation, via obiter dicta, of Bogdanov v. People, 941 P.2d 247 (Colo. 1997), abrogated on other grounds by Griego v. People, 19 P.3d 1 (Colo. 2001). See maj. op. ¶¶ 25–35. For these reasons, I respectfully concur in the judgment only.
¶41        The majority posits a conflict between Bogdanov and Wheeler and then resolves the conflict by selecting the Wheeler rationale as the winner. Maj. op. ¶¶ 28–29. Although at first blush certain broad language in these two cases might appear to be in conflict, once the cases are distinguished and contextualized, the tension disappears.
¶42        To the extent that the majority concludes that the reasoning in Wheeler applies in this case, I agree. However, instead of broadening Wheeler to subsume Bogdanov, I would apply Wheeler’s rationale in a more limited way—simply to include strict liability crimes such as the one at issue here. This would avoid unnecessarily overruling Bogdanov. It is axiomatic that controlling precedent should be abrogated only very reluctantly. See Creacy v. Indus. Comm’n, 366 P.2d 384, 386 (Colo. 1961). This approach also has the benefit of avoiding a great deal of dicta concerning the complicity standard for crimes other than the crime at issue here, which is vehicular assault. See maj. op. ¶¶ 28–29, 31–32; see also City & Cnty. of Denver ex rel. Bd. of Water Comm’rs v. Consol. Ditches Co.,807 P.2d 23, 38 (Colo. 1991) (noting that a court “should avoid an advisory opinion on an abstract proposition of law”).
¶43        Moreover, I am not convinced that Bogdanov should be overruled, even if the opportunity were properly presented. I am troubled by the majority’s assertion that the “difference” between the new standard it creates and the standard in Bogdanov “is largely academic.” Maj. op. ¶ 32. In any event, the instant case does not present us with an opportunity to retreat from our holding in Bogdanov, because Bogdanov concerned complicity in an intentional crime and thus does not bear on the narrow question before us today. 941 P.2d at 249.
¶44        In Wheeler, the court was faced with the question of whether the defendant could be found complicit in a criminally negligent homicide. 772 P.2d at 103. The court explained that its specific task was to reconcile the statutory language requiring that a complicitor “‘inten[d] to promote or facilitate the commission of the offense’ with the definition of criminally negligent homicide.” Id. (alteration in original) (citing § 18-1­603, C.R.S. (1986)). To complicate this task, the court had to confront language from prior cases that had characterized the statutory phrase “intent to promote . . . the commission of the offense,” § 18-1-603, as a “requirement” that a complicitor have knowledge “that the principal intended to commit the crime.” Wheeler, 772 P.2d at 103 (emphasis added) (citing People v. Thompson, 655 P.2d 416, 418 (Colo. 1982)).
¶45        In other words, the Wheeler court was tasked with defining complicity in a crime of negligence—a question of first impression—but the case law up until that point had only defined complicity from the vantage of intentional crimes. See Thompson, 655 P.2d at 417 (complicitor charged with assault, robbery, and criminal mischief); see also People v. Larson, 572 P.2d 815, 817 (Colo. 1977) (underlying crime of aggravated robbery); People v. Martin, 561 P.2d 776, 777 (Colo. 1977) (underlying crime of aggravated robbery); People v. Marques, 520 P.2d 113, 118 (Colo. 1974) (underlying crime of theft). Though these cases had defined the complicity statute as requiring that the complicitor know “that the principal intended to commit the crime,” the Wheeler court distinguished them. 772 P.2d at 103, 105; see also Marques, 520 P.2d at 118. It reasoned that “[w]hen doing the act which ‘amount[s] to criminal negligence,’” a principal “need not intend to cause” the “specific result, death.” Wheeler, 772 P.2d at 105 (second alteration in original) (quoting § 18-3-105, C.R.S. (1986)). “Therefore,” the court reasoned, a complicitor “need not know that death will result from the principal’s conduct because the principal need not know that.” Id. In other words, the court held that a complicitor in negligent homicide need not “intend” to cause death, because by definition the underlying crime involves an unintentional death.
¶46        Thus, the Wheeler court held that a complicitor to criminally negligent homicide must only “be aware that the principal is engaging in conduct that grossly deviates from the standard of reasonable care and poses a substantial and unjustifiable risk of death to another. In addition, he must aid or abet the principal in that conduct and, finally, death must result from that conduct.”[1]Id. This holding is a product of the differences between complicity in an intentional crime and complicity in a crime of negligence. The Wheeler court’s unique task places in context that court’s seemingly more general comments concerning the meaning of the complicity statute. 772 P.2d at 103–04. As explained in Bogdanov, the expansive language in Wheeler must be seen through the lens of the court’s objective there, and limited to that context. Bogdanov, 941 P.2d at 251. Thus, I disagree with the majority that our rationale in Wheeler “can only be understood as an answer to the broader question concerning the meaning of the [complicity statute]—not an answer limited to crimes of negligence.” Maj. op. ¶ 25.
¶47        A person is legally accountable as a complicitor if “with the intent to promote or facilitate the commission of the offense, he or she aids, abets, advises, or encourages the other person in planning or committing the offense.” § 18-1-603, C.R.S. (2015) (emphasis added). Bogdanov and Wheeler are not in conflict if one accepts that the answer to the question of whether a complicitor has aided a principal “with the intent to promote or facilitate the commission of the offense” varies depending on the underlying crime. Id. Thus, the test for whether a complicitor has provided aid to a principal with the intent “to promote or facilitate” that offense is related to the elements that comprise the “commission” of the offense. Id.
¶48        A complicitor’s conduct must have a connection to the “commission of the crime committed by the principal”—namely, the complicitor must intend that such commission occur. Bogdanov, 941 P.2d at 250–51. The complexity arises because crimes differ significantly in the nature of their commission. For example, a principal commits a crime of negligence when he engages in conduct that is a “gross deviation from the standard of care that a reasonable person would exercise” and a certain result—for example death—occurs. Wheeler, 772 P.2d at 105. Negligent homicide, thus, can be understood as a crime that consists of negligent behavior followed by the unintended circumstance that a person is thereby killed. On the other hand, a principal commits an intentional crime, such as murder, when “with the intent to cause the death of a person . . . he causes the death of that person.” § 18-3-102, C.R.S. (2015). Because the “commission” of these two crimes is so different, so too are the requirements for guilt under a complicity theory. This is why, to be guilty of negligent homicide, a complicitor need only (1) know that the principal intends to engage in the negligent conduct; (2) have the intent that the principal actually engage in the conduct; and (3) aid, abet, advise, or encourage the principal to undertake that conduct. See Wheeler, 772 P.2d at 105. But to be guilty under a complicity theory for murder, the complicitor must aid or abet the principal with the intent that the principal cause the death of that person—which is the same intent that the principal must have. § 18-3-102; Bogdanov, 941 P.2d at 250–51.
¶49        Both Bogdanov and Wheeler seem to go too far in places. Bogdanov suggests that a complicitor must always have “the culpable mental state required for the underlying crime” without noting that some crimes have no culpable mental state— namely, strict liability crimes. Id. And Wheeler’s broad statement that the complicity statute “only requires knowledge by the complicitor that the principal is engaging in, or about to engage in, criminal conduct,” arguably goes outside the bounds of the statute and risks sweeping up actors who would not properly be viewed as complicitors; for example, a taxi driver who wants a fare despite hearing the murderous plans of his passengers, a pawn shop owner who sells a gun to a known gang member, or a landlord who leases a building to a madam. 772 P.2d at 104. But if these cases are limited to the context in which they arose—Wheeler for complicity to negligent homicide and Bogdanov for complicity to assault—their differences become reconcilable.
¶50        I would hold that Bogdanov’s language that a complicitor must “share the culpable mental state required for the underlying crime committed by the principal” does not preclude liability under a complicity theory for a strict liability crime. 941 P.2d at 250–51. A strict liability crime does not require a culpable mental state.[2] Thus, Bogdanov’s statement simply does not apply, and should be understood in the context of that case: as a statement of the standard for complicity in intentional crimes.
¶51        Wheelerimposes liability for unintentional crimes, and thus provides an apt analogy in the instant case. 772 P.2d at 103. I would simply apply Wheeler’s rationale to strict liability crimes. Accordingly, I would hold that, to be guilty of complicity for vehicular assault under section 18-3-205, C.R.S. (2015), (1) the complicitor must be aware that the principal is engaging in or will engage in conduct that comprises the actus reus of vehicular assault: namely, that the principal is or will operate a motor vehicle while under the influence of alcohol;[3] (2) the complicitor must aid, abet, advise, or encourage the principal in that conduct; (3) with the intent that the principal engage in that conduct; and (4) the conduct is ultimately “the proximate cause of a serious bodily injury to another.” § 18-3-205.
¶52        I do not agree with the majority’s unsupported assertion that its new construction of the complicity statute “imposes a comparable, if not more onerous, standard for establishing complicitor liability, in virtually every possible scenario.” Maj. op. ¶ 30. As the majority itself acknowledges, its new rule “arguably require[s] a less culpable state of mind on the part of the complicitor than of the principal” when it comes to crimes of specific intent. Id. at ¶ 32. But the majority sweeps this concern away by asserting that “it could hardly be said” that a complicitor who aids, abets, advises, or encourages another with both the required awareness of the person’s intent and “a design” that the person cause the prohibited result, “is any less culpable than having that conscious objective himself.” Id. Even if this issue were properly before the court—which it is not—I remain skeptical of this assertion. In my view, the court’s prior interpretation of section 18-1-603 in Bogdanov is sound. 941 P.2d at 251. This court is bound by stare decisis—and accordingly, I disapprove of freewheeling dicta in the majority opinion which purports to abrogate Bogdanov. Maj. op. ¶¶ 35–36; see also  People v. Blehm, 983 P.2d 779, 788 (Colo. 1999) (“[S]tare decisis ‘should be adhered to in the absence of sound reason for rejecting it.’” (quoting Smith v. Dist. Ct., 907 P.2d 611, 612 (Colo. 1995)).
¶53        Because the majority does not limit itself to applying the Wheeler rule within the boundaries of the case before us, I cannot join in its analysis. Accordingly, I respectfully concur in the judgment.

[1] The majority restates this test and adds the requirement that the complicitor also “be cognizant” that the principal “fail[s] to perceive” the substantial and unjustifiable risk. Maj. op. ¶ 30. But Wheeler requires only that the complicitor know of the risk and know that the principal plans to conduct himself in a way that shows a disregard for that risk. 772 P.2d at 105. I would not phrase the standard for complicity in a crime of negligence to require that the complicitor know what the principal perceives or does not perceive.
[2] While strict liability crimes do not require a “culpable mental state” as defined by statute, they do at a minimum require “proof that the proscribed conduct was performed voluntarily.” People v. Rostad, 669 P.2d 126, 129 (Colo. 1983).
[3] As defined by section 18-3-205(2).