Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's
homepage at http://www.courts.state.co.us. Opinions are also
posted on the Colorado Bar Association's homepage at
http://www.cobar.org.

ADVANCE SHEET HEADNOTE
October 15, 2019

**2019 CO 87**

**No. 17SC692, *Butler v. People*—Criminal Law—Money Laundering—
Complicitor Liability—Sufficiency of Evidence.**

In this case, the supreme court concludes that a division of the court of
appeals erred by broadly suggesting that a defendant can be held criminally liable
as a complicitor in money laundering if the evidence at trial merely suggests
complicity in the principal's overall operation. The supreme court reaffirms that
the proper standard for assessing whether a defendant may be found liable as a
complicitor, set forth in *People v. Childress*, 2017 CO 65M, 363 P.3d 155, requires a
determination of the requisite elements of the principal's offense. Finally, the
supreme court concludes that there is sufficient evidence in the record to support
the defendant's convictions. Accordingly, the judgment of the court of appeals is
affirmed.

# The Supreme Court of the State of Colorado
2 East 14th Avenue • Denver, Colorado 80203

## 2019 CO 87

### Supreme Court Case No. 17SC692
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 14CA986

**Petitioner:**

Caleb Charles Butler,

v.

**Respondent:**

The People of the State of Colorado.

### Judgment Affirmed
*en banc*
October 15, 2019

**Attorneys for Petitioner:**
Walta LLC
Mark G. Walta
   *Denver, Colorado*

**Attorneys for Respondent:**
Philip J. Weiser, Attorney General
John T. Lee, Senior Assistant Attorney General
   *Denver, Colorado*

**JUSTICE HART** delivered the Opinion of the Court.

¶1     In early 2013, an undercover officer sold Clayton Schaner a series of ostensibly stolen goods as part of an investigation into whether Schaner was using his computer repair store, Just Computers, as a front to buy and resell stolen items on e-commerce websites.  At the time, Caleb Charles Butler was the store's assistant manager.  Investigators discovered that Schaner made near-daily transfers of money to Butler from his e-commerce sites, and Butler then withdrew cash and gave it to Schaner.  Schaner and Butler were both arrested.  Schaner was charged with a number of offenses, among them money laundering.  Butler was charged with, and ultimately convicted of, two counts of money laundering for aiding and abetting Schaner in two specific laundering transactions.

¶2     The court of appeals affirmed Butler's convictions, holding that there was sufficient evidence for a juror to conclude beyond a reasonable doubt that Butler was complicit in Schaner's overall money laundering operation.  *People v. Butler*, 2017 COA 98, __ P.3d __.  The jury, however, did not convict Butler of complicity in a "money laundering operation," but rather of laundering the proceeds from two specific transactions.  Moreover, Colorado's money laundering statute, section 18-5-309, C.R.S. (2019), speaks of liability for "a transaction," not an operation.  We therefore conclude that the court of appeals was incorrect to the extent that it suggested that Butler's participation in the overall operation was sufficient, without evidence as to the specific acts charged, to establish his complicitor

liability for these convictions. Nonetheless, based on the record, we conclude that there is sufficient evidence to establish Butler's complicity in laundering the proceeds from the two specifically charged transactions. We therefore uphold Butler's convictions.

## I. Facts and Procedural History

¶3 In late 2012, police received a tip from a confidential informant that Schaner, through Just Computers, was purchasing and reselling stolen goods. Investigators learned that so-called "boosters" would steal items from retail stores and either sell them directly to Schaner or return them, without a receipt, for merchandise return cards that they would sell to Schaner. Schaner would then re-sell the cards and merchandise on Internet e-commerce platforms. Schaner typically transacted with these boosters out of a small room located in the back of Just Computers, both during and after store hours. This room could be accessed from either the front of the store or a side door leading directly into Schaner's office.

¶4 During store hours, Butler ran the front counter of Just Computers as its assistant manager. But in addition to repairing computers and selling computer parts to legitimate customers, Butler assisted Schaner's backroom transactions in a variety of ways. Among other things, Butler sometimes purchased, with Schaner's cash, merchandise cards brought to the front of Just Computers by alleged boosters. He also received near-daily PayPal money transfers from

Schaner, which he then withdrew in cash and returned to Schaner. Schaner transferred about $181,000 from Just Computers' PayPal account to Butler over the course of Butler's two-year employment with the store. During that same time, Butler withdrew approximately $166,000 in cash from ATMs.

¶5 In early 2013, an undercover officer investigating Just Computers made a series of controlled sales of ostensibly stolen merchandise and illicitly obtained cards to Schaner. Two of these sales formed the basis for the money laundering charges at issue here.

¶6 First, on the morning of January 29, 2013, Butler brought Schaner cash he had withdrawn from an ATM. Later that day, Detective Blanscet came to Schaner's back office and sold Schaner four packs of Gillette Fusion razor blades that he indicated he had stolen. The blades were listed on eBay through the Just Computers account on January 31. That day, an individual working with the police repurchased the blades and verified that they were the same items sold to Schaner. The money from the sale went to Schaner's PayPal account, and Schaner transferred money from that account to Butler the next morning.

¶7 Second, on the morning of February 13, 2013, Butler again brought Schaner cash from Butler's bank account. Detective Blanscet again entered Schaner's back office, this time to sell Schaner a purportedly stolen DeWalt Rotary Hammer Drill. Butler came into the back office during the course of that transaction and saw

4

Blanscet, from whom he himself had earlier purchased an ostensibly stolen Best Buy gift card. Schaner listed the drill on eBay on February 15. Like the blades, the drill was repurchased and verified by investigators. Money from the sale went into Schaner's PayPal account, and money from that account was transferred to Butler the next day.

¶8    At trial, a jury convicted Butler on a complicity theory of two counts of money laundering under section 18-5-309(1)(a)(II). The jury verdicts specifically mentioned that these counts pertained to the Gillette razor blades and the DeWalt drill. These two convictions served as the necessary predicates for a further conviction under the Colorado Organized Crime Control Act ("COCCA"), §§ 18-17-101 to -109, C.R.S. (2019). The trial court sentenced Butler to eight years in a Community Corrections program.

¶9    On appeal, Butler unsuccessfully challenged the sufficiency of the evidence for his money laundering convictions. *Butler*, ¶ 33. Rejecting his claim, a division of the court of appeals ruled that there was sufficient evidence, viewed in the light most favorable to the prosecution, for a juror to reasonably conclude that (1) the principal, Schaner, was involved in a "money laundering operation"; (2) Butler aided, abetted, or encouraged Schaner in "carrying out the illegal operation"; (3) Butler intended to help Schaner conceal or disguise the true nature of "the

funds" passing through Just Computers; and (4) Butler was aware of the circumstances surrounding Schaner's "overall plan." *Id.* at ¶¶ 24, 28, 30, 32.

¶10 Butler petitioned this court for relief. We granted certiorari.[1]

## II. Analysis

¶11 We begin by explaining the elements that must be proven for a conviction on a complicitor theory of money laundering. In the process, we expressly refute the court of appeals' overly broad analysis. We then apply the correct test to Butler's case to determine if there is sufficient evidence in the record for a reasonable juror to conclude beyond a reasonable doubt that Butler was guilty as a complicitor of the money laundering transactions with which he was charged. We conclude that the record supports Butler's convictions.

¶12 Colorado's complicitor liability statute provides that a person is "legally accountable as principal for the behavior of another constituting a criminal offense if, with the intent to promote or facilitate the commission of the offense, he or she

[1] We granted certiorari to review the following issue:

1. Whether a defendant who (1) was not physically present during the commission of the charged crimes; (2) did not take any specific action to facilitate or promote those particular crimes; and (3) had no apparent knowledge that the principal intended to commit the crimes in question, can be held criminally liable as a complicitor under the test set forth in *People v. Childress*, 2015 CO 65M, 363 P.3d 155.

aids, abets, advises, or encourages the other person in planning or committing the offense." § 18-1-603, C.R.S. (2019). We explained in *People v. Childress* that liability under this provision requires: (1) the intent to aid, abet, advise, or encourage the principal in his criminal act or conduct and (2) an awareness of "those elements of the offense describing the prohibited act itself and the circumstances surrounding its commission, including a required mental state, if any," that are necessary for commission of the offense in question. 2015 CO 65M, ¶ 29, 363 P.3d 155, 164. Assessing whether a defendant may be found liable as a complicitor therefore requires a determination of the requisite elements of the principal's offense.

¶13    Schaner was charged with and convicted of money laundering under section 18-5-309(1)(a)(II), which provides that:

> (1) A person commits money laundering if he or she:
> (a) Conducts or attempts to conduct a financial transaction that involves money or any other thing of value that he or she knows or believes to be the proceeds, in any form, of a criminal offense:
>
> …
>
> (II) With knowledge or a belief that the transaction is designed in whole or in part to:
>
> (A) Conceal or disguise the nature, location, source, ownership, or control of the proceeds of a criminal offense . . . .

¶14    By its terms, this provision of the money laundering statute requires the prosecution to prove that the defendant (1) conducted or attempted to conduct a financial transaction; (2) knew or believed that the property involved in that

7

transaction represented the proceeds of a criminal offense; and (3) knew or believed that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of the criminal offense.

¶15 Given these elements of money laundering, and guided by our decision in *Childress,* we conclude that a complicitor is liable for a principal's act of money laundering if the prosecution can prove that: (1) the principal committed an act of money laundering; (2) the complicitor aided, abetted, advised, or encouraged that specific act of money laundering; (3) the complicitor intended to do so;[2] (4) the complicitor was aware that the principal knew or believed that the property involved in the specific money laundering transaction represented the proceeds of a criminal offense; and (5) the complicitor was aware that the principal knew or believed that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of the criminal offense.

---

[2] In this context, intent does not refer to the culpable mental state of "[i]ntentionally" or "with intent" defined in section 18-1-501(5), C.R.S. (2019); it refers to "the commonly understood sense of desiring or having a purpose or design to aid, abet, advise, or encourage the principal in his criminal act or conduct." *Childress*, ¶ 29, 363 P.3d at 164.

¶16 The court of appeals applied a much more sweeping interpretation of complicitor liability for money laundering than the statutory language permits. When discussing the sufficiency of the evidence for Butler's conviction, the court stated:

> A reasonable juror could also conclude that returning the funds in cash to Schaner aided, abetted, or encouraged Schaner in carrying out the illegal operation; that defendant returned the cash with the knowledge of the circumstances and the intent to further the illegal operation; that defendant's assistance was important to the operation; and that defendant acted with the intent and knowledge to further Schaner's overall plan.

*Butler*, ¶ 32.

¶17 In referencing Schaner's "operation" and "overall plan," the court of appeals suggested that Butler need only have participated in Schaner's overall operation to be liable for the two specific acts of laundering with which he was charged. But this approach fails to appreciate both the text of Colorado's money laundering statute and the specific charges on which Butler was convicted. By focusing on the entire operation rather than the specific acts charged, the court of appeals lowered the bar for the prosecution.

¶18 Of course, Butler's participation in Schaner's overall operation may be circumstantial evidence that he participated in the two charged transactions. But that in no way obviates the prosecution's ultimate obligation here—to prove Butler's complicity for the specific acts charged. We therefore conclude that the

9

court of appeals was incorrect insofar as it suggested that the prosecution need only prove Butler's participation in the operation rather than in the specific acts of money laundering charged.

¶19 Our inquiry does not, however, end there. We must now consider whether the evidence presented was sufficient to allow the jury to conclude that Butler was complicit in the specific acts charged.

## III. Application

### 1. Standard of Review

¶20 When assessing the sufficiency of the evidence supporting a conviction, we review the record de novo to determine whether the relevant evidence, viewed as a whole and in the light most favorable to the prosecution, was sufficient to support the conclusion by a reasonable juror that the defendant was guilty beyond a reasonable doubt. *See People v. Perez*, 2016 CO 12, ¶ 8, 367 P.3d 695, 697. In doing so, we must give the prosecution the benefit of every reasonable inference that may be drawn from the evidence. *Clark v. People*, 232 P.3d 1287, 1292 (Colo. 2010). We must leave the determination of the credibility of witnesses to the jury. *People v. Sprouse*, 983 P.2d 771, 778 (Colo. 1999). We may not serve as the "thirteenth juror" to weigh various pieces of evidence or resolve conflicts in the evidence. *Id.*

## 2. There is Sufficient Evidence for Butler's Convictions

¶21 Here we must consider whether there was sufficient evidence in the record to support the following conclusions: (1) Schaner committed an act of money laundering; (2) Butler aided, abetted, advised, or encouraged that specific act of money laundering; (3) Butler intended to do so; (4) Butler was aware that Schaner knew or believed that the property involved in the specific money laundering transaction represented the proceeds of a criminal offense; and (5) Butler was aware that Schaner knew or believed that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of the criminal offense.

¶22 Because neither party seriously contested the sufficiency of the evidence demonstrating that Schaner engaged in money laundering in connection with the sale of the razor blades and the drill, we turn to what the evidence showed Butler knew and intended as to those transactions.

¶23 As the court of appeals noted, there was plenty of evidence that Butler was aware of and involved in Schaner's overall money laundering operation. That evidence is certainly part of the picture the jury could consider in evaluating the specific charges.

¶24 There was also evidence that connected Butler specifically to the money laundering transactions involving the purchase and resale of the razor blades and

11

the drill. On the mornings of each of those sales, Butler provided Schaner with cash he withdrew after a transfer into his account from Schaner's Paypal account. Immediately after each of the sales, money was transferred to him from Schaner's Paypal account, and he subsequently withdrew cash to give to Schaner.

¶25 Further supporting Butler's knowledge that the purchases Schaner made on the days in question were money laundering transactions is the fact that Butler had previously purchased a stolen merchandise card from Detective Blanscet. When he subsequently saw Detective Blanscet in Schaner's office on the day of the drill purchase, he knew that Detective Blanscet purported to be a booster.

¶26 Given these facts, we conclude that there was sufficient evidence in the record for a juror to conclude beyond a reasonable doubt that (1) Butler aided, abetted, advised, or encouraged Schaner in laundering the proceeds from the razor blade and drill transactions; (2) Butler intended to do so; (3) Butler was aware that Schaner knew or believed that the razor blades and the drill represented the proceeds of a criminal offense; and (4) Butler was aware that Schaner knew or believed that the e-commerce sales of those items were designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the razor blades and the drill. We therefore uphold Butler's convictions.

## IV. Conclusion

¶27 The court of appeals was incorrect insofar as it suggested that Butler's convictions for specific instances of money laundering could be upheld if the evidence at trial showed Butler's complicity in Schaner's overall operation. Nonetheless, we conclude that there was sufficient evidence in the record to support Butler's convictions. We therefore affirm the judgment of the court of appeals.