17CA1391 Peo v Lancaster 11-10-2021 COLORADO COURT OF APPEALS Court of Appeals No. 17CA1391 Summit County District Court No. 16CR47 Honorable Mark D. Thompson, Judge The People of the State of Colorado, Plaintiff-Appellee, v. William Walker Lancaster III, Defendant-Appellant. JUDGMENT AFFIRMED IN PART, VACATED IN PART, AND CASE REMANDED WITH DIRECTIONS Division VII Opinion by JUDGE NAVARRO Grove and Pawar, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced November 10, 2021 Philip J. Weiser, Attorney General, Gabriel P. Olivares, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee Megan A. Ring, Colorado State Public Defender, Anne T. Amicarella, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant
1 ¶ 1 Defendant, William Walker Lancaster III, appeals the judgment of conviction entered on jury verdicts finding him guilty of unlawful possession and use of a controlled substance. Because we conclude that the evidence was sufficient to support both convictions but that they should merge, we affirm as to the possession conviction but vacate as to the use conviction. I. Sufficiency of the Evidence ¶ 2 Lancaster contends that the prosecution presented insufficient evidence to permit the jury to (1) find him guilty as a complicitor and (2) reject the affirmative defense set forth in section 18-1-711, C.R.S. 2021. He is mistaken on both points. A. Evidence Supporting the Convictions & Procedural History ¶ 3 Lancaster and Mark Largay were friends who had participated in “drug court” (or “recovery court”) in Summit County. One afternoon, Largay texted Lancaster to ask questions about fentanyl. Largay asked whether a 25 mcg/h patch was “strong.” Lancaster said, “[i]t’s not a bad dose but it really depends on whether it is a gel patch or a papery Mylan patch. The gel patches are where it’s at.” Largay asked about their “street price” because “[d]ude is saying 60 [dollars].” Lancaster asked what type of patches they 
2 were, and Largay sent him a photo of the label, which read in part, “Fentanyl Transdermal System.” Lancaster replied, “fuckin sweet dude. Do you want me to show you how to extract the gel?” ¶ 4 After Largay asked about their worth, Lancaster opined, “60 is steep for a 25. . . . I’d say 30 but this is [S]ummit.” Lancaster also advised, “[e]xtract the gel and you’ve got a nice party,” and said fentanyl “is not tested for in the normal 10 or 12 panel urine tests.” When Largay asked about smoking the fentanyl gel, Lancaster reported that smoking it is “definitely effective” and “you just have to be super careful. People die that way all the time but it definitely works.” Lancaster then asked, “are you going to do it tonight? I’ll split the cost with ya if you wanna wait til the AM?” Largay asked how Lancaster would “do it” and said he wanted to talk with Lancaster. Lancaster noted that he had smoked it once in the past and he offered to call Largay. Largay said, “[o]k” and “I got 9 of em.” ¶ 5 The next day, Lancaster saw Largay in person and noticed that he appeared seriously ill, which Lancaster assumed (and which Largay effectively admitted to him) was due to fentanyl use. After they returned to Largay’s home from running an errand, Lancaster took a shower. Lancaster then went upstairs and found Largay 
3 unconscious in his bedroom. Lancaster dragged Largay to the shower, called 911, and performed chest compressions with dispatcher guidance. ¶ 6 Paramedics arrived and determined that Largay was in cardiac arrest. The paramedics were told (from unidentified people at the scene) that Largay had a history of drug abuse but he had been “clean” for 90 days. The paramedics administered epinephrine and Narcan. These efforts were ultimately unsuccessful, and Largay died in the ambulance on the way to the hospital. ¶ 7 Meanwhile, Deputy Sheriff Eric Sipes and Deputy Brian Metzger responded to the scene. While the paramedics attempted to revive Largay, the deputies questioned Lancaster. When the officers asked about Largay’s drug history, Lancaster said that Largay had a history of using “heroin” and “crystal meth.” Lancaster also said that “from his knowledge,” he knew that Largay had not “used in nine months.” When asked whether he was aware if Largay had used drugs that evening, Lancaster repeatedly said he had no knowledge of Largay using drugs. ¶ 8 As relevant to this appeal, Lancaster was charged with and convicted of unlawful possession of a controlled substance and 
4 unlawful use of a controlled substance, each as a complicitor to Largay’s offenses. The trial court sentenced Lancaster to two years in community corrections on the possession count and a concurrent sentence of twelve months in jail on the use count. B. Standard of Review and Elements of the Offenses ¶ 9 We review the record de novo to determine whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient both in quantity and quality to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt. McCoy v. People, 2019 CO 44, ¶ 63. ¶ 10 A person commits unlawful possession of a controlled substance if, unless authorized by Colorado law, they knowingly possess a controlled substance. § 18-18-403.5(1), C.R.S. 2021. A person commits unlawful use of a controlled substance if they use a controlled substance, except when it is dispensed by or under the direction of a person licensed or authorized by law to prescribe, administer, or dispense the controlled substance for bona fide medical needs. § 18-18-404(1)(a), C.R.S. 2021. 
5 C. Complicity Liability ¶ 11 Under a complicity liability theory, “[a] person is legally accountable as principal for the behavior of another constituting a criminal offense if, with the intent to promote or facilitate the commission of the offense, he or she aids, abets, advises, or encourages the other person in planning or committing the offense.” § 18-1-603, C.R.S. 2021; see People in Interest of N.D.O., 2021 COA 100, ¶ 23 (“[C]omplicity is a theory by which a person commits a crime.”). ¶ 12 The Colorado Supreme Court has interpreted the complicity statute as imposing a dual mental state requirement. This means the complicitor must have (1) “the intent, in the commonly understood sense of desiring or having a purpose or design, to aid, abet, advise, or encourage the principal in his criminal act or conduct,” and (2) “an awareness of those circumstances attending the act or conduct he seeks to further that are necessary for commission of the offense.” People v. Childress, 2015 CO 65M, ¶ 29. The “circumstances attending the act or conduct” are “those elements of the offense describing the prohibited act itself and the 
6 circumstances surrounding its commission, including a required mental state.” Id. ¶ 13 Lancaster does not dispute that Largay committed the crimes of unlawful possession and use of a controlled substance. Rather, Lancaster argues that the prosecution did not present evidence sufficient to allow a reasonable jury to find that Lancaster was aware of the circumstances surrounding Largay’s commission of the offenses. We disagree. ¶ 14 The evidence as previously described provided ample support for the jury’s finding that Lancaster, in the text messages, intentionally aided, advised, and encouraged Largay in acquiring and using fentanyl. Additionally, the evidence permitted the jury to find that Lancaster was aware of (1) Largay’s intent to acquire and use fentanyl; (2) the drug’s form, dosage, and packaging; (3) the asking price, and whether that price was reasonable; (4) the fact that Largay was buying the drug off the street; (5) the general location of the buy (Summit County); (6) Largay’s likely method of ingesting the drug; (7) the fact that Largay had purchased the drug and the amount; and (8) the approximate times of Largay’s acts. 
7 Indeed, the evidence allowed the jury to find that Lancaster offered to share in the purchase price and use the drug with Largay. ¶ 15 Accordingly, the evidence supported the jury’s finding that Lancaster was aware of the circumstances showing Largay’s knowing possession and use of fentanyl. See Childress, ¶ 29; see also Butler v. People, 2019 CO 87, ¶ 12 (“Assessing whether a defendant may be found liable as a complicitor therefore requires a determination of the requisite elements of the principal’s offense.”). ¶ 16 Nonetheless, Lancaster argues that the evidence did not show he was aware of various other details surrounding Largay’s conduct, such as the identity of Largay’s dealer, precisely where Largay was during the text exchange, and precisely when Largay would buy and use the drug. ¶ 17 Following Childress, however, our supreme court has stressed that “complicitor liability requires awareness of all circumstances necessary for the commission of the offense.” People in Interest of B.D., 2020 CO 87, ¶ 12. “An individual commits an offense when he completes all the statutory elements of that offense.” Id. at ¶ 13. Hence, the dual mental state requirement does not extend to circumstances that are not elements of the offense. See id. at ¶ 15 
8 (“[B]ecause sentence enhancers are not elements of the offense, Childress’s dual mental state requirement does not extend to them.”). If the dual mental state requirement does not extend to circumstances that enhance the complicitor’s sentence, surely the requirement does not extend to the non-elemental details surrounding the offense that Lancaster identifies (e.g., the specific time and location of the drug purchase). ¶ 18 Relatedly, we are not persuaded by Lancaster’s contention that there was an insufficient temporal connection between his behavior and Largay’s offenses. In People v. Sandoval, 2018 COA 156 — a case on which Lancaster relies — the division declined to impute a temporal element to Colorado’s complicity statute. Id. at ¶ 17. Specifically, the division rejected the notion that a complicitor must have advance knowledge of the principal’s mental state and conduct; instead, the division agreed that “even ‘roughly contemporaneous knowledge by the complicitor of the principal’s intent is sufficient.’” Id. at ¶ 18 (quoting People v. Alvarado, 284 P.3d 99, 103 (Colo. App. 2011)). The upshot is that either advance knowledge or roughly contemporaneous knowledge by the complicitor is sufficient to impose complicity liability. 
9 ¶ 19 The evidence here was sufficient to show that Lancaster had both. The evidence permitted the jury to find that Largay obtained nine fentanyl patches only hours after texting with Lancaster about buying the drug. ¶ 20 Given all this, we conclude that the prosecution presented sufficient evidence to support the jury’s findings that Lancaster committed unlawful possession and use of a controlled substance as a complicitor. See People v. Harrison, 2020 CO 57, ¶¶ 32-33. D. The Affirmative Defense ¶ 21 Before trial, Lancaster filed a motion to dismiss in which he asserted immunity under section 18-1-711(1), which precludes criminal prosecution of a person who reports an emergency drug or alcohol overdose. The trial court denied Lancaster’s motion because it found that he did not cooperate with first responders as required by the statute. ¶ 22 At trial, however, the court permitted Lancaster to raise an affirmative defense based on section 18-1-711(1), and the court so instructed the jury. Like the court had, the jury rejected it. ¶ 23 When an affirmative defense is submitted to the jury, “the prosecution bears the burden of proving beyond a reasonable doubt 
10 that the affirmative defense is inapplicable.” Roberts v. People, 2017 CO 76, ¶ 22. That is, the prosecution must present sufficient evidence to disprove the affirmative defense. See Harrison, ¶¶ 30, 36. To do so, the prosecution need only disprove one condition of the defense. See id. at ¶ 34. ¶ 24 Under section 18-1-711(1), a person is immune from arrest and prosecution for unlawful possession and use of a controlled substance if (a) The person reports in good faith an emergency drug or alcohol overdose event to a law enforcement officer, to the 911 system, or to a medical provider; (b) The person remains at the scene of the event until a law enforcement officer or an emergency medical responder arrives or the person remains at the facilities of the medical provider until a law enforcement officer arrives; (c) The person identifies himself or herself to, and cooperates with, the law enforcement officer, emergency medical responder, or medical provider; and (d) The offense arises from the same course of events from which the emergency drug or alcohol overdose event arose. 
11 (Emphasis added.)1 ¶ 25 In Harrison, ¶ 29, our supreme court held that section 18-1-
711(1)(a) requires both that a person report in good faith what the person “subjectively perceives” is an acute condition caused by the consumption or use of drugs or alcohol and that a layperson would reasonably believe that the reported condition is a drug or alcohol overdose needing medical assistance. Therefore, “subsection (1)(a) cannot be satisfied if the person making the report does not report in good faith (i.e., with honesty) what she subjectively perceives is an acute condition caused by the consumption or use of drugs or alcohol.” Id. at ¶ 26. 1 Because we ultimately conclude that the evidence here was sufficient to disprove this defense, we need not resolve the People’s claim that this statute does not set forth an affirmative defense at all. See People v. Harrison, 2020 CO 57, ¶ 19 (“[W]e assume without deciding that Harrison was entitled to invoke the statute as an affirmative defense to the charges brought against her.”). Moreover, to the extent the People argue that we should never entertain a defendant’s claim that the prosecution presented insufficient evidence to disprove an affirmative defense, we reject that argument as contrary to our supreme court’s jurisprudence. See, e.g., id. at ¶ 30 (“[O]ur task is to discern whether the prosecution presented sufficient evidence to disprove the affirmative defense raised by Harrison pursuant to section 18-1-711.”). 
12 ¶ 26 For purposes of our analysis, we assume that Lancaster satisfied subsection (1)(a) as described in Harrison. In other words, when Lancaster called 911 and later spoke with the paramedics or officers at the scene, he subjectively believed in good faith that Largay was suffering from an acute condition caused by the use of drugs. Id. This assumption is supported by Lancaster’s text exchange with Largay as well as Lancaster’s later interview with an officer in which he said he had assumed that Largay was noticeably ill the day after their text conversation due to Largay’s use of the fentanyl bought the day before. ¶ 27 Given Lancaster’s subjective understanding of Largay’s condition, however, the jury could find that Lancaster failed to cooperate with the officers or paramedics as required by section 18-
1-711(1)(c). Rather than communicate his belief that Largay was suffering from a drug overdose, Lancaster repeatedly told Sipes and Metzger that he was not aware that Largay had recently used drugs. Indeed, when Metzger asked about Largay’s history of drug use, Lancaster said that, to his knowledge, Largay had not used drugs in nine months. A reasonable jury could decide that, by reporting the opposite of what he believed to be true, Lancaster did not cooperate 
13 with the paramedics or officers as they responded to Largay’s drug overdose. See Merriam-Webster Dictionary, https://perma.cc/56PV-F4XE (defining “cooperate” as “to act or work with another or others”); see also People v. Bondurant, 2012 COA 50, ¶ 40 (noting that “cooperate” means to “act or work together with another or others to a common end” (quoting Webster’s Third New International Dictionary 501 (2002)). ¶ 28 Still, Lancaster maintains that subsection (1)(c) does not require a person to “divulge the specifics of everything he knows or even suspects in order to be cooperative.” But Lancaster’s failure to report every detail he knew about Largay’s recent activities is not the issue. Rather, the question before us is whether the jury could reasonably find that Lancaster did not cooperate as required by subsection (1)(c) where he failed to report his subjective belief that Largay was suffering from a drug overdose and, instead, he reported that Largay had not used drugs in months. We conclude that the answer is “yes.” ¶ 29 Consequently, the prosecution presented sufficient evidence to disprove the defense set forth in section 18-1-711(1). 
14 II. Merger of Lancaster’s Convictions ¶ 30 Finally, Lancaster argues that the trial court erred by failing to merge his convictions for unlawful possession of a controlled substance and unlawful use of the same substance. See People v. Villapando, 984 P.2d 51, 54 (Colo. 1999). He concludes that his conviction for unlawful use (the lesser offense here) must be vacated. The People agree, and we also agree. See People v. Wood, 2019 CO 7, ¶ 28. ¶ 31 So we vacate Lancaster’s conviction for unlawful use of a controlled substance. III. Conclusion ¶ 32 As to the conviction for unlawful possession of a controlled substance, the judgment is affirmed. As to the conviction for unlawful use of a controlled substance, the judgment is vacated. The case is remanded with directions to the trial court to amend the mittimus accordingly. JUDGE GROVE and JUDGE PAWAR concur.