19CA1450 Peo v Talamantes 01-20-2022 COLORADO COURT OF APPEALS Court of Appeals No. 19CA1450 Arapahoe County District Court No. 16CR3391 Honorable Ben L. Leutwyler III, Judge The People of the State of Colorado, Plaintiff-Appellee, v. Francisco Martin Talamantes, Defendant-Appellant. JUDGMENT AND SENTENCE AFFIRMED Division V Opinion by JUDGE YUN Dunn and Welling, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced January 20, 2022 Philip J. Weiser, Attorney General, Elizabeth Rohrbough, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee Krista A. Schelhaas, Alternate Defense Counsel, Littleton, Colorado, for Defendant-Appellant 
1 ¶ 1 Francisco Martin Talamantes appeals the district court’s judgment convicting him of felony murder, burglary, aggravated motor vehicle theft, arson, and tampering with physical evidence, as well as five habitual criminal counts. He also appeals his sentence of life in prison plus 126 years. We affirm the judgment and sentence. I. Background ¶ 2 At about 2 a.m. on Thanksgiving 2016, Talamantes drove two other men to an Aurora motel in a stolen vehicle. According to the People, the men went there with the aim of confronting people at a party. Talamantes considered someone at the party a snitch whom he wanted to harm, while one of the other two men believed that there were individuals at the party who owed him money and whom he wanted to rob. ¶ 3 Surveillance footage shows the three men, led by Talamantes, enter a room on the second floor of the motel. Talamantes carried a BB gun, while the other two men each carried a firearm. While inside, one of the other two men demanded the victim’s cell phone and, when the victim refused to comply, shot and killed him. The 
2 three men then fled in the stolen car. After leading the police on a chase, Talamantes set fire to the car. ¶ 4 The People charged Talamantes with, as pertinent here, first degree felony murder, § 18-3-102(1)(b), C.R.S. 2016; first degree burglary, § 18-4-202(1), C.R.S. 2021; second degree kidnapping, § 18-3-302(1), (4), C.R.S. 2021; first degree aggravated motor vehicle theft, § 18-4-409(2), (3)(b), C.R.S. 2021; second degree arson, § 18-4-103(1), C.R.S. 2021; tampering with physical evidence, § 18-8-610(1)(a), C.R.S. 2021; five habitual criminal counts, § 18-1.3-801, C.R.S. 2021; and two crime-of-violence sentence enhancers, § 18-1.3-406(2)(a)(I)(A), C.R.S. 2021 (using, possessing, or threatening the use of a deadly weapon); § 18-1.3-406(2)(a)(I)(B) (causing serious bodily injury or death to a non-participant). ¶ 5 The case proceeded to trial. As relevant to this appeal, the People argued that Talamantes was guilty of burglary (and felony murder based on burglary) either as a principal or a complicitor. They argued that he was guilty of kidnapping and robbery (and felony murder based on those crimes) as a complicitor. Talamantes’s defense was that he was in the wrong place, with the 
3 wrong people, at the wrong time; that he did not know his associate was going to shoot anyone; and that he did not go into the motel room with the intent to commit any crime. But he conceded that he was guilty of the arson and tampering charges. ¶ 6 The jury found Talamantes guilty of felony murder “based on the commission or attempted commission” of both robbery and burglary. It found him guilty of first degree burglary “based on the commission or attempted commission” of assault, menacing, and harassment. It also found him guilty of first degree aggravated motor vehicle theft, second degree arson, and tampering with physical evidence. The jury found Talamantes not guilty of second degree kidnapping. The court later found him guilty of all five habitual criminal counts. ¶ 7 After entering judgment of conviction, the district court sentenced Talamantes to life in prison for felony murder, plus a consecutive 126 years for the burglary, motor vehicle theft, arson, and tampering charges.
1 1 Following a separate trial, the shooter was convicted of first degree felony murder and burglary. See People v. Garcia, (Colo. App. No. 18CA0776, June 24, 2021) (not published pursuant to C.A.R. 
4 ¶ 8 Talamantes now appeals the judgment of conviction and his sentence. II. Analysis ¶ 9 Talamantes makes four arguments. First, he contends that the district court’s complicity instruction was plainly erroneous. Second, he argues that prosecutorial misconduct violated his right to a fair trial. Third, he argues that his convictions for burglary and felony murder violated his right to be free from double jeopardy. And fourth, he contends that the court erred by sentencing him to a consecutive 126 years on top of his sentence to life in prison. We address each of his arguments in turn. A. Complicity Instruction ¶ 10 Talamantes contends that the district court plainly erred by giving the jury an outdated complicity instruction. We disagree. 1. Additional Facts ¶ 11 The district court provided the jury with the following Instruction 27 on complicitor liability: 35(e)) (reversing and remanding for a new trial based on violations of CRE 403). The third associate was found dead hours after the motel murder and never charged. 
5 Complicity is not a separate crime. Rather, it is a legal theory by which one person may be found guilty of a criminal offense that was committed in whole or in part by another person. To be found guilty as a complicitor, the prosecution must prove each of the following circumstances beyond a reasonable doubt: 1. A crime must have been committed. 2. Another person must have committed all or part of the crime. 3. The defendant must have had knowledge that the other person intended to commit all or part of the crime. 4. The defendant must have had the intent to promote or facilitate the commission of the crime. 5. The defendant must have aided, abetted, advised, or encouraged the other person in planning or committing the crime. This instruction tracked the model instruction in use at the time of his trial in January 2019, see COLJI-Crim. G1:06 (2017), and Talamantes did not object to it. ¶ 12 Next, the court instructed the jury that the elements of the crime of first degree burglary are: 1. That the defendant, 
6 2. in the State of Colorado, at or about the date and place charged, 3. knowingly, 4. entered unlawfully, or remained unlawfully after a lawful or unlawful entry, 5. in a building or occupied structure, 6. with intent, 7. to commit therein the crime(s) of kidnapping, (see instruction 21), and/or menacing (see instruction 20), and/or assault (see instruction 20) and/or harassment (see instruction 20), and 8. in effecting entry or while in the building or occupied structure or in immediate flight from the building or occupied structure, 9. the defendant or another participant in the crime committed the crime of assault or the crime of menacing against any person. Other instructions provided the jury with the elements of the offenses of kidnapping, menacing, assault, and harassment. ¶ 13 As it deliberated, the jury sent the district court a question: “Does the notion/definition of ‘complicity’ (Instruction 27) apply to all aspects of all charges; specifically, does the definition of complicity apply to sub-distinctions/rulings of count two [first degree burglary] subsections.” Defense counsel asked the court to 
7 refer the jury back to the instructions. The prosecutor, however, noted that “even recently our Supreme Court has said that [the notion of complicity] has to apply to intent, and it has to apply to mens rea,” and suggested to the court that “the answer is quite clearly yes.” ¶ 14 The court decided to answer the jury’s question “simply” with “yes.” It reasoned that this answer was “certainly a correct statement of the law” and that it would “clarify the confusion the jury has expressed through this question, without unnecessary elaboration.” ¶ 15 When the jury returned its first degree burglary verdict, it unanimously found, beyond a reasonable doubt, that Talamantes was guilty of the burglary based on “the commission or attempted commission” of assault, menacing, and harassment. 2. Standard of Review and Preservation ¶ 16 The district court has a duty to instruct the jury correctly on the applicable law. Townsend v. People, 252 P.3d 1108, 1111 (Colo. 2011). We review the court’s instructions as a whole de novo to determine whether they accurately informed the jury of the governing law. Riley v. People, 266 P.3d 1089, 1092-93 (Colo. 
8 2011). But so long as the instructions are “correct statements of the law and fairly and adequately cover the issues presented,” the court “has substantial discretion in formulating” them. People v. Payne, 2019 COA 167, ¶ 16 (citation omitted). We therefore review a court’s decisions on the form and style of instructions for abuse of discretion. Townsend, 252 P.3d at 1111. ¶ 17 The parties agree that Talamantes did not preserve this issue for appeal, so our review is for plain error. Hagos v. People, 2012 CO 63, ¶ 14; see also Crim. P. 52(b). A plain error is one that is obvious and substantial. Hagos, ¶ 14. An error is obvious if it contravenes a clear statutory command, a well-settled legal principle, or Colorado case law. Scott v. People, 2017 CO 16, ¶ 16. An error is substantial, in turn, if it so undermines the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. Hagos, ¶ 14. In the jury instruction context, “the defendant must ‘demonstrate not only that the instruction affected a substantial right, but also that the record reveals a reasonable possibility that the error contributed to his conviction.’” Hoggard v. People, 2020 CO 54, ¶ 13 (quoting People v. Miller, 113 P.3d 743, 750 (Colo. 2005)). 
9 3. Governing Law ¶ 18 “The United States and Colorado Constitutions guarantee the defendant in a criminal case both the right to have a jury decide his case and the right to have the prosecutor prove to that jury, beyond a reasonable doubt, every element of the charged offense.” Griego v. People, 19 P.3d 1, 7 (Colo. 2001); see also U.S. Const. art. III, § 2, cl. 3; U.S. Const. amends. VI, XIV; Colo. Const. art. II, §§ 16, 23, 25. ¶ 19 According to the complicity statute, “[a] person is legally accountable as principal for the behavior of another constituting a criminal offense if, with the intent to promote or facilitate the commission of the offense, he or she aids, abets, advises, or encourages the other person in planning or committing the offense.” § 18-1-603, C.R.S. 2021. ¶ 20 In People v. Childress, 2015 CO 65M, ¶ 2, our supreme court addressed the reach of complicitor liability, concluding that it “is not limited to crimes defined as containing a culpable mental state” but “can extend to strict liability offenses.” In doing so, the supreme court defined the “dual mental state” necessary for complicitor liability, requiring that the complicitor have both 
10 (1) the intent, in the commonly understood sense of desiring or having a purpose or design, to aid, abet, advise, or encourage the principal in his criminal act or conduct, and (2) an awareness of those circumstances attending the act or conduct he seeks to further that are necessary for commission of the offense in question. By “circumstances attending the act or conduct,” we intend those elements of the offense describing the prohibited act itself and the circumstances surrounding its commission, including a required mental state, if any . . . . Id. at ¶ 29. ¶ 21 According to a comment to the 2015 model jury instructions on complicity, Childress “substantially modified” the supreme court’s earlier decision in Bogdanov v. People, 941 P.2d 247 (Colo.), amended, 955 P.2d 997 (Colo. 1997), disapproved of on other grounds by Griego, 19 P.3d 1. The Model Criminal Jury Instructions Committee (Committee) therefore said that it was “currently reviewing these instructions.” COLJI-Crim. G1:06 cmt. 2 (2015). The 2017 model jury instruction on complicity, however — the one in use at the time of Talamantes’s trial — contained elements identical to those in the 2015 model instructions. Compare COLJI-Crim. G1:06 (2017), with COLJI-Crim. G1:06 (2015). “[W]hile simply following model instructions does not 
11 provide ‘safe harbor that insulates instructional error from reversal,’ it certainly makes any error that occurred . . . less obvious.” Hoggard, ¶ 17 (citation omitted). 4. Discussion ¶ 22 Talamantes asserts that, in the wake of Childress, and based on a new model instruction released after his trial,
2 “a complicity jury instruction for the crime of first degree burglary” should specifically state that the following elements must be proved: 1. Another person committed the crime of first degree burglary, as defined at the end of this Instruction, and 2. the defendant, with the desire or the purpose or design to aid, abet, advise, or encourage the other person in planning or committing that crime, 3. aided, abetted, advised, or encouraged the other person in planning or committing that crime, and 4. the defendant was aware of all of the elements of that crime, as defined at the end of this Instruction. For purposes of this Instruction, another person committed the crime of first degree 2 Talamantes’s proposal resembles the 2018 model instruction on complicity. COLJI-Crim. J:03 (2018). That model instruction, which was released two weeks after his trial, adds the requirement that “the defendant was aware of all of the elements of that crime.” 
12 burglary if the prosecution proves each of the following elements beyond a reasonable doubt . . . . He argues that the district court’s complicity instruction violated due process because, unlike the instruction above, it (1) lowered the burden of proof; (2) improperly included the “all or part of” language; and (3) “allowed the jury to intermix the various offenses for each element of the complicity instruction.” ¶ 23 First, we disagree that, by failing to expressly require the jury to find that Talamantes was aware of the shooter’s intent to commit kidnapping, menacing, assault, or harassment inside the motel room, the court’s complicity instruction improperly lowered the burden of proof. The court’s instruction informed the jury that to find Talamantes guilty as a complicitor of any crime — e.g., first degree burglary — it had to find that he “had the intent to promote or facilitate the commission of the crime” and that he had “knowledge that the other person intended to commit all or part of the crime.” It thus directed the jury to the elements of “the crime” — first degree burglary — contained in a separate instruction. That instruction included the requirement of intent to commit kidnapping, menacing, assault, or harassment. Read as a 
13 whole, then, the instructions ensured that the jury would find Talamantes guilty of first degree burglary as a complicitor only if he was aware of the principal’s intent to commit kidnapping, menacing, assault, or harassment inside the motel room. See Childress, ¶ 29. ¶ 24 To the extent that the court’s instruction did not explicitly direct the jury to find that he “was aware of all of the elements of that crime,” including the principal’s mental state, we conclude that the omission — if erroneous — was not obvious. As mentioned above, the court’s instruction tracked the model instruction in use at the time, COLJI-Crim. G1:06 (2017). Hoggard, ¶ 17. And though the 2015 model instructions indicate that Childress “substantially modified” the court’s earlier precedent and that the Committee was “currently reviewing” its complicity instructions, COLJI-Crim. G1:06 cmt. 2 (2015), the Committee had not actually changed anything by the time of Talamantes’s trial, almost four years later. ¶ 25 Second, we disagree that the district court plainly erred by including “all or part of” in the elements (1) “[a]nother person must have committed all or part of the crime” and (2) “[t]he defendant must have had knowledge that the other person intended to commit 
14 all or part of the crime.” The “all or part of” language does not appear in the current model instruction. In Bogdanov, 941 P.2d at 256, however, our supreme court explained that this language applies to “the fact pattern wherein the principal and at least one other person, possibly the defendant, together commit the essential elements of the crime.” By contrast, when the defendant has committed none of the elements of the crime and one principal alone has committed them all, the Bogdanov court saw “no need” for the instruction to contain the “all or part of” language. Id.; see also COLJI-Crim. G1:06 cmt. 4 (2015) (including the “all or part of” language “[c]onsistent with the supreme court’s direction in Bogdanov”). ¶ 26 Its inclusion in the latter situation, however, is usually superfluous rather than prejudicial. See Bogdanov, 941 P.2d at 252, 256 (rejecting the defendant’s contention that the “all or part of” language allowed the jury to find him guilty even if he did not know the principal intended to commit the crime but, rather, knew only that the principal intended to commit part of the crime); People v. Osborne, 973 P.2d 666, 670 (Colo. App. 1998) (“[I]f the principal committed the crime in its entirety and the complicitor did 
15 not perform any of the elements of the offense, then the inclusion of the ‘all or part’ language of the instruction is superfluous and any error is harmless.”). Thus, the court did not plainly err by including the “all or part of” language in its complicity instruction. ¶ 27 Third, relying on Butler v. People, 2019 CO 87, Talamantes argues that the district court’s complicity instruction, by referring generically to “a crime” and “the crime,” allowed the jury to “intermix” different offenses in the instruction. That case, however, did not concern jury instructions; the issue in Butler, ¶ 11, had to do with the sufficiency of the evidence supporting the defendant’s money laundering conviction under a complicity theory. The supreme court’s statement that, “[b]y focusing on the entire operation rather than the specific acts charged, the court of appeals lowered the bar for the prosecution” is therefore inapposite here. See id. at ¶ 17. Instead, reading the court’s instructions as a whole, they clearly informed the jury that complicity was a theory of liability potentially applicable to each of the charged offenses. ¶ 28 We are not persuaded otherwise by Talamantes’s argument that the jury’s question about the complicity instruction proves the instruction’s inadequacy. The jury’s question — “Does the 
16 notion/definition of ‘complicity’ (Instruction 27) apply to all aspects of all charges; specifically, does the definition of complicity apply to sub-distinctions/rulings of count two [first degree burglary] subsections” — arguably shows that it was confused about how to apply the complicity instruction. But the court’s answer — “yes” — removed any confusion. It told the jury to apply the definition of complicity to the “sub-distinctions” of first degree burglary, including the intent to commit any of one or more crimes inside the motel room. ¶ 29 Accordingly, we conclude that the district court’s complicity instruction was not plainly erroneous. B. Prosecutorial Misconduct ¶ 30 Talamantes next contends that, from voir dire through closing arguments, the prosecutors made improper, misleading statements about complicity, reasonable doubt, and Talamantes’s veracity that violated his right to a fair trial. We disagree. 1. Standard of Review and Governing Law ¶ 31 In reviewing a claim of prosecutorial misconduct, we employ a two-step analysis. Wend v. People, 235 P.3d 1089, 1096 (Colo. 2010). First, we ask whether the prosecutor’s conduct was 
17 improper based on the totality of the circumstances. Id. Second, if the prosecutor’s conduct was improper, then we ask whether the conduct warrants reversal under the proper standard of review. Id. ¶ 32 At the first step of the analysis, it is well settled that in closing argument a prosecutor may not convey an opinion about the truth or falsity of a witness’s testimony; nor may the prosecutor suggest “personal knowledge of evidence unknown to the jury.” Domingo-Gomez v. People, 125 P.3d 1043, 1049 (Colo. 2005). And during voir dire, a prosecutor may not misstate the law. People v. Carter, 2015 COA 24M-2, ¶ 71. A prosecutor may, however, “point to circumstances that raise questions about, or cast doubt on, a witness’s testimony, and may draw reasonable inferences from the evidence as to the credibility of witnesses.” People v. Sommers, 200 P.3d 1089, 1096 (Colo. App. 2008) (quoting People v. Welsh, 176 P.3d 781, 788 (Colo. App. 2007)). ¶ 33 Turning to the second step, when, as here, the defendant did not contemporaneously object to the alleged prosecutorial misconduct, we review it for plain error. People v. Lovato, 2014 COA 113, ¶ 58. “To constitute plain error, prosecutorial misconduct must have been so flagrant, glaring, or tremendously 
18 improper that the trial court should have intervened sua sponte.” People v. Cordova, 293 P.3d 114, 121 (Colo. App. 2011). We evaluate the misconduct claim “in the context of the argument as a whole and in light of the evidence before the jury.” People v. Geisendorfer, 991 P.2d 308, 312 (Colo. App. 1999). A prosecutor’s misstatement in closing argument thus rarely rises to the level of plain error. People v. Ujaama, 2012 COA 36, ¶ 70. Misconduct does so only when “its probable effect is a verdict based on bias and prejudice rather than on the relevant facts and applicable law.” Id. 2. Discussion ¶ 34 Talamantes takes issue with the prosecutors’ comments on three topics: complicity, reasonable doubt, and his own truthfulness. We address each topic separately. a. Complicity ¶ 35 Talamantes points to multiple times, particularly during voir dire and closing argument, when the prosecutor made what he deems misleading statements about complicity. During voir dire, for example, one of the prosecutors asked a prospective juror whether they were okay with the fact that “[i]f you knew a robbery was going to go down, even without a gun, and somebody pulls a 
19 gun, the law says you are still on the hook for that, too.” And during closing argument, the prosecutor contended that Talamantes was guilty as a complicitor because he was “an active participant,” “actively involved in many bad things that happened in the early morning of Thanksgiving 2016,” and “actively involved in a series of events that led to [the victim] violently losing his life.” ¶ 36 Talamantes is correct that none of these statements fully explain Childress’s conclusion about the “dual mental state requirement” of complicitor liability — i.e., that a complicitor must have both an intent to aid the principal and “an awareness of those circumstances attending the act or conduct he seeks to further that are necessary for commission of the offense.” But the prosecutor’s statements during closing argument, when considered as a whole and in context, were permissible comments on the evidence. People v. Walters, 148 P.3d 331, 334 (Colo. App. 2006). He was not instructing the jury about the law on complicity. As for voir dire, though he may have used the metaphor loosely, the prosecutor again was not trying to inform the prospective jurors about the law of complicity. Carter, ¶ 71. Rather, in context, he was testing 
20 whether the prospective jurors held beliefs that would prevent them from reaching a guilty verdict based on complicitor liability. ¶ 37 In sum, the prosecutor’s statements about complicity were not improper. b. Reasonable Doubt ¶ 38 Talamantes asserts that the prosecutors made several statements that “trivialized” reasonable doubt. ¶ 39 First, during voir dire, one of the prosecutors asked, “Understanding that beyond a reasonable doubt is still really the highest standard in any justice system in the world, understanding it’s really high, is it something less than I know 100 percent that this thing is true?” He continued, “Ninety, 91, 98, 98.99999 — whatever. Can it be less than a hundred?” ¶ 40 Then, during Talamantes’s closing argument, defense counsel used the following hypothetical to describe reasonable doubt: [I]magine that you are driving down the street in your vehicle, and you are approaching an intersection, and you get to a street in front of you that these people have a stop sign. You don’t have a stop sign. So you are driving down the street, but you see a car kind of coming up. You are not sure, maybe going a little fast, not sure if they are 
21 going to stop. In that situation, maybe you touch the brakes. Maybe you just take your foot, and you put your foot over the brake and cover the brake, just being precautious in case that person doesn’t want to stop at that stop sign they are going to run through it, and they hit you. You hesitate. That’s based on your reason and common sense. That’s you assessing the situation and hesitating. That’s the type of doubt we are talking about now. You may never hit the brakes. You might put your foot over the brake, cover it, take it back off, continue without slowing down, but you hesitated for no matter how long, that’s the type of doubt we are talking about. ¶ 41 During rebuttal closing argument, the prosecutor called defense counsel’s hypothetical “a really bad and a really nonsensical explanation and illustration of what reasonable doubt is and is not.” The prosecutor said that the application of reasonable doubt involves a hypothetical reasonable person engag[ing] in the same deliberative process that every single one of us, every single one of you, do every single day about ordinary life decisions, right? Reasonable doubt isn’t some unattainable, unknown standard, guys. It’s the same standard of deliberation and decision making that we use every single day to make all manner of normal decisions. 
22 ¶ 42 As an initial matter, though it is improper to “trivialize” the state’s burden by quantifying the reasonable doubt standard, People v. Camarigg, 2017 COA 115M, ¶ 44, the prosecutor’s statement during voir dire did not so. The prosecutor’s statement quantifying reasonable doubt (questioning whether “beyond a reasonable doubt” might mean “[n]inety, 91, 98, 98.99999” percent) was made for a permissible purpose: “to convey the difference between proof beyond a reasonable doubt and proof beyond all doubt.” Id. at ¶ 49. In context, the prosecutor’s statement was intended to tease out the prospective jurors’ views on the state’s burden of proof rather than to trivialize it. Cf. Pettigrew v. People, 2022 CO 2, ¶ 45 (“[T]he fact that the court’s comment came in the course of a colloquy designed to tease out a particular prospective juror’s possible bias — rather than as part of the court’s general explanation of the law . . . — reduces the statement’s potential impact as an erroneous instruction of law.”). ¶ 43 The prosecutor’s statement about reasonable doubt during rebuttal closing, however, was improper. It is improper to “equate the burden of proof to an everyday choice,” as the prosecutor did here. Id. at ¶ 46; see also People v. Vialpando, 2020 COA 42, 
23 ¶¶ 54-55 (concluding that the prosecutor “trivialized reasonable doubt” by asking potential jurors whether “they could recognize, ‘beyond a reasonable doubt,’ the American flag in the courtroom even though it was folded and not entirely visible” and whether, if a potential juror was on the gameshow “Who Wants to be a Millionaire,” she could identify the flag for the million-dollar question) (cert. granted Oct. 12, 2020); cf. Tibbels v. People, 2022 CO 1, ¶ 3 (concluding that a trial court’s voir dire comments equating reasonable doubt with evaluating a home purchase lowered the prosecution’s burden of proof). ¶ 44 In context, however, the prosecutor’s statement, though improper, was not so flagrantly, glaringly, or tremendously improper that the district court “should have intervened sua sponte.” Cordova, 293 P.3d at 121. ¶ 45 First, the district court itself correctly instructed the jury on the definition of reasonable doubt. The court also told the jury, “It is my job to decide what rules of law apply to the case. While the attorneys may comment on some of these rules, you must follow the instructions I give you.” Absent an indication to the contrary, we 
24 presume that the jury followed the court’s instructions. People v. Lomanaco, 802 P.2d 1143, 1145 (Colo. App. 1990). ¶ 46 And second, the prosecutor’s statements in rebuttal closing, which improperly equated reasonable doubt to everyday decision-making, Camarigg, ¶ 46, were made in response to defense counsel doing the same thing — equating reasonable doubt with approaching an intersection and wondering whether oncoming traffic would stop. ¶ 47 Under these circumstances, we conclude that the prosecutor’s comment on reasonable doubt during rebuttal closing argument, though improper, does not warrant reversal. c. Comments on Talamantes’s Veracity ¶ 48 Finally, Talamantes asserts that the prosecutors improperly expressed their personal opinions on his guilt and veracity. Specifically, he points to closing argument, during which one of the prosecutors tried to refute the idea that the shooter was in the car and forced Talamantes to set fire to it. The prosecutor questioned why, if the shooter was in the car, none of the responding police officers saw the shooter fleeing from it. He described the idea as “fantastical,” “manifestly made up,” and “manifestly impossible.” 
25 He said, “It is a creation. It is fake. It is not real. It is something that this Defendant creates when he knows he’s going up the creek a little bit.” Then, the other prosecutor began her rebuttal closing argument with the following: Ladies and gentlemen, to conceive of Francisco Talamantes of being not guilty, to conceive of Francisco Talamantes as being nothing more than an innocent bystander, who got caught up with the wrong people with the wrong crowd at the wrong time, then one must necessarily concede [sic] of Francisco Talamantes as being deaf, dumb, mute, and blind. ¶ 49 As Talamantes correctly points out, it is an improper expression of personal opinion for a prosecutor to use any form of the word “lie” to describe a witness’s testimony. Domingo-Gomez, 125 P.3d at 1051. “In cases that turn on the credibility of witness testimony,” however, “the line between [proper] argument about whether the jury can rely on the testimony of witnesses and improper expressions of personal opinion becomes hard to draw.” Id. Here, the prosecutor’s statements properly asked the jurors to disbelieve Talamantes’s explanation that the shooter forced him to burn the stolen car and asked them, instead, to believe police 
26 officers responding to the scene, who did not see the shooter fleeing from the car with Talamantes. ¶ 50 Thus, we conclude that the prosecutors’ statements on Talamantes’s veracity were not improper. C. Double Jeopardy ¶ 51 Third, Talamantes argues that the district court reversibly erred and violated his right to be free from double jeopardy by not merging his burglary conviction into his felony murder conviction. We disagree. 1. Additional Background ¶ 52 Talamantes was charged with first degree felony murder based on robbery, burglary, and kidnapping. The district court instructed the jury that, to find Talamantes guilty of felony murder, it had to find that he “committed or attempted to commit the crime(s) of Robbery . . . and/or Burglary . . . and/or Kidnapping” and that, in the course of or in furtherance of the crime (or crimes), someone other than one of the participants died. The court separately instructed the jury on the elements of robbery, burglary, and kidnapping. 
27 ¶ 53 When the jury returned its verdicts, it unanimously found, beyond a reasonable doubt, that both robbery and burglary were “the basis for [its] finding of guilt for felony murder.” 2. Standard of Review and Preservation ¶ 54 “Whether convictions for different offenses merge is a question of law that we review de novo.” Page v. People, 2017 CO 88, ¶ 6. But Talamantes concedes that he did not preserve his double jeopardy objection. We review unpreserved double jeopardy claims for plain error — that is, for error that is obvious and substantial. Reyna-Abarca v. People, 2017 CO 15, ¶ 47; Hagos, ¶ 14. 3. Discussion ¶ 55 “The Double Jeopardy Clauses of the United States and Colorado Constitutions protect an accused against being twice placed in jeopardy for the same crime.” Woellhaf v. People, 105 P.3d 209, 214 (Colo. 2005) (citing U.S. Const. amend. V; Colo. Const. art. II, § 18). The bar against multiplicity — that is, “the charging of multiple counts and the imposition of multiple punishments for the same criminal conduct,” id. — lies “at the core” of double jeopardy protections, Quintano v. People, 105 P.3d 585, 590 (Colo. 2005). See also § 18-1-408(1)(a), C.R.S. 2021 (A 
28 defendant “may not be convicted of more than one offense if . . . [o]ne offense is included in the other.”). ¶ 56 In the felony murder context, this means that, because the predicate felony is a lesser included offense of felony murder, a defendant cannot be convicted of both offenses. See Boulies v. People, 770 P.2d 1274, 1282 (Colo. 1989) (“An offense is ‘lesser included’ for purposes of merging into a greater offense when proof of the essential elements of the greater offense necessarily establishes all of the elements required to prove the lesser offense.”). Rather, the defendant’s conviction for the predicate felony merges into his felony murder conviction. See id. ¶ 57 Here, the jury found Talamantes guilty of felony murder based on his commission or attempted commission (as principal or complicitor) of burglary and robbery. He was not separately charged with robbery, so the jury did not return a separate verdict finding him guilty of that offense. But based on the felony murder instruction, by finding him guilty of felony murder based on robbery, the jury necessarily found that he committed or attempted to commit robbery (as either principal or complicitor). See Lomanaco, 802 P.2d at 1145 (“In the absence of any indication to 
29 the contrary,” we presume that the jury follows the instructions it is given.). ¶ 58 Accordingly, because Talamantes was convicted of felony murder based on robbery but not convicted of robbery, merger principles do not require that any of his convictions be vacated. Cf. Callis v. People, 692 P.2d 1045, 1054 (Colo. 1984) (“[W]hen a defendant is convicted of multiple felonies, all of which are alleged as the legal predicates for the commission of felony murder, that felony which most directly contributes to the death of the victim should serve as the essential element of the felony murder conviction.”). D. Sentencing ¶ 59 Last, Talamantes argues that the district court reversibly erred by ordering all his sentences to run consecutively. In the alternative, he argues that the court reversibly erred by not ordering his arson and tampering sentences, at least, to run concurrently. We disagree. 1. Additional Background ¶ 60 At the sentencing hearing, which followed Talamantes’s habitual criminal adjudication, the parties agreed that the district 
30 court had little discretion regarding what sentences to impose. The only available sentence for first degree felony murder was life in prison. See § 18-1.3-401(1)(a)(I), C.R.S. 2021. And based on its finding that he had previously been convicted of at least three felonies arising out of separate and distinct criminal episodes, section 18-1.3-801(2)(a)(I)(A) required the court to impose four times the presumptive maximum sentence for each of his other convictions. Both parties thus agreed that the court had to impose sentences of forty-eight years for first degree burglary, forty-eight years for first degree aggravated motor vehicle theft, twenty-four years for second degree arson, and six years for tampering with physical evidence. ¶ 61 The prosecutor asked for the sentences to run consecutively, summing up to a total of life plus 126 years in prison. Talamantes, while recognizing that “[o]bviously, the Court doesn’t have too much discretion here,” asked for the sentences to run concurrent to each other. ¶ 62 The court acknowledged that “there is some discretion permitted regarding consecutive versus concurrent, but even that is limited.” “Given the facts of this case” and “the nature of the 
31 ongoing criminal enterprise,” it ordered the sentences to run consecutively. Later in the proceeding, the court remarked that “[a] person’s life was taken for absolutely no reason” and that the case involved “absolutely senseless violence.” 2. Standard of Review and Preservation ¶ 63 At the sentencing hearing, Talamantes requested that the district court impose concurrent sentences, but he did not make the arguments he makes on appeal: that the court misunderstood its discretion to do so and that it was required to impose concurrent sentences for two of his convictions. Accordingly, we review those issues for plain error — that is, error that is obvious and substantial. Martinez v. People, 2015 CO 16, ¶ 14 (Plain error review applies “when a party raises a new argument on appeal” or “alters the grounds for his objection on appeal.”); Hagos, ¶ 14. 3. Governing Law and Discussion ¶ 64 Generally, “[w]hen a defendant is convicted of multiple offenses, the sentencing court has the discretion to impose either concurrent or consecutive sentences.” Juhl v. People, 172 P.3d 896, 899 (Colo. 2007). And “[a]s long as each sentence falls within the range established by the legislature,” we will usually uphold 
32 consecutive sentences against a charge that the court abused its discretion. People v. Montgomery, 669 P.2d 1387, 1390 (Colo. 1983). The court must, however, “state on the record the basic reasons for imposing the sentence.” People v. Watkins, 200 Colo. 163, 167, 613 P.2d 633, 637 (1980). ¶ 65 When consecutive sentences result in an “extraordinarily long prison term,” however, that term “must be supported by evidence in the record justifying the trial judge’s action.” Montgomery, 669 P.2d at 1390 (quoting People v. Edwards, 198 Colo. 52, 56, 598 P.2d 126, 129 (1979)). “In exercising sentencing discretion, a trial court must consider the nature of the offense, the character and rehabilitative potential of the offender, the development of respect for the law and the deterrence of crime, and the protection of the public.” People v. Fuller, 791 P.2d 702, 708 (Colo. 1990). ¶ 66 As a threshold matter, we reject Talamantes’s argument that the district court reversibly erred because it misunderstood its authority to impose concurrent sentences. The court’s recognition that it had “some discretion . . . regarding consecutive versus concurrent” belies that assertion. To the extent that the court implied that its discretion was limited, we agree with the People 
33 that, in context, the court was probably referring to the mandatory sentences required by section 18-1.3-801(2)(a)(I)(A). ¶ 67 Nor are we persuaded by Talamantes’s argument that the district court’s sentencing order must be vacated because the court did not explain its reasoning. The court said that consecutive sentences were warranted “[g]iven the facts of this case” and “the nature of the ongoing criminal enterprise.” More specifically, it observed that a life had been “taken for absolutely no reason” and that the case involved “absolutely senseless violence.” We perceive no abuse of discretion there. Fuller, 791 P.2d at 708 (“If the sentence is within the range required by law, is based on appropriate considerations as reflected in the record, and is factually supported by the circumstances of the case, an appellate court must uphold the sentence.”). ¶ 68 Turning to Talamantes’s alternative argument, we disagree that, because his convictions for arson and tampering were based on identical evidence — i.e., torching the stolen car — section 18-1-408(3) required the sentences for those convictions to run concurrently. Section 18-1-408(3) expressly grants the sentencing court discretion to impose consecutive sentences “where multiple 
34 victims are involved.” See also People v. Cullen, 695 P.2d 750, 752 (Colo. App. 1984) (When “multiple convictions arise from crimes committed upon multiple victims, the evidence is not identical and therefore [section 18-1-408(3)] is inapplicable.”). ¶ 69 Here, as the People point out, arson and tampering harmed separate victims. The victim of the arson was the car’s owner, who lost her car, while the victim of the tampering charge was the State, whose ability to prosecute the murder was impaired. See § 18-8-610(1)(a) (“A person commits tampering with physical evidence if, believing that an official proceeding is pending or about to be instituted . . . , he . . . [d]estroys, mutilates, conceals, removes, or alters physical evidence with intent to impair its verity or availability in the pending or prospective official proceeding . . . .”). Contrary to Talamantes’s assertion, nothing in section 18-1-408(3) indicates that the legislature intended that the provision apply only to “traditional, named victims.” ¶ 70 In sum, we perceive no error, let alone plain error, in the district court’s imposition of consecutive sentences. 
35 III. Conclusion ¶ 71 For these reasons, we affirm the judgment of conviction and sentence. JUDGE DUNN and JUDGE WELLING concur.